603 A.2d 583

**Mary E. STAHLI, Appellant,**

v.

**Robert WITTMAN, Appellee.**

Superior Court of Pennsylvania.

Submitted Sept. 11, 1991.

Filed Jan. 6, 1992.

Reargument Denied March 20, 1992.

Jason W. Manne, Pittsburgh, for appellant.

David A. Whitney, Ridgway, for appellee.

Before WIEAND, CIRILLO and MONTGOMERY, JJ.

WIEAND, Judge:

Charles Stahli was born on September 3, 1974 to Pauline Stahli, who was then seventeen (17) years of age and unmarried. He has been cared for since birth by his maternal grandmother, Mary E. Stahli.[1] On March 29, 1988, at the request of the Pennsylvania Department of Public Welfare, Mary Stahli filed an action for child support against Robert Wittman, whom she alleged to be the father of Charles. The issue of paternity was tried non-jury on February 1, 1990, before the Court of Common Pleas of Elk County,[2] which, on August 27, 1990, entered a finding in favor of the alleged father. Post-trial motions were denied, and the present appeal was filed on behalf of the maternal grandmother by the Department of Public Welfare. It contends that the trial court should have entered judgment n.o.v. in favor of the claimant.

A judgment n.o.v. may be entered only in a clear case where the facts are such that no two reasonable persons can fail to agree that the verdict was improper. *Mitzelfelt v. Kamrin*, 526 Pa. 54, 61, 584 A.2d 888, 891 (1990); *Atkins v. Urban Redevelopment Auth. of Pittsburgh*, 489 Pa. 344, 351, 414 A.2d 100, 103 (1980); *Lira v.*

1. At the time of trial, Pauline Stahli resided in New York City with six other children to whom she had given birth.

2. In the interim, the complaint had been forwarded to McKean County, where Wittman was believed to reside, pursuant to the Revised Uniform Reciprocal Enforcement of Support Act (RURESA), 23 Pa.C.S. § 4501 et seq. That court dismissed the action on the basis that the maternal grandmother lacked standing under RURESA to pursue an action against a defendant whose paternity had not previously been determined. The correctness of that ruling is not now before this Court and with respect thereto we express no opinion. We observe, however, that the court in McKean County did not determine the substantive issue of paternity, and its order, therefore, is not res judicata with respect to the issue heard by the court in Elk County.

*Albert Einstein Medical Center,* 384 Pa.Super. 503, 508, 559 A.2d 550, 552 (1989); *Fleck v. Durawood, Inc.,* 365 Pa.Super. 123, 127, 529 A.2d 3, 5 (1987). A reviewing court must consider the evidence, as well as all reasonable inferences which may be drawn therefrom, in the light most favorable to the verdict winner, in this case the defendant. *Mitzelfelt v. Kamrin, supra; Atkins v. Urban Redevelopment Auth. of Pittsburgh, supra; Lira v. Albert Einstein Medical Center, supra; Vernon v. Stash,* 367 Pa.Super. 36, 45–46, 532 A.2d 441, 445–446 (1987). Moreover, the factual findings of the trial judge, sitting without a jury, carry the same weight as a jury verdict, and the Superior Court is limited in its review to determining whether those findings are supported by competent evidence. *Arcadia Co., Inc. v. Peles,* 395 Pa.Super. 203, 208, 576 A.2d 1114, 1116 (1990); *Pato v. Cernuska,* 342 Pa.Super. 609, 612, 493 A.2d 758, 759 (1985); *Jenks v. Avco Corp.,* 340 Pa.Super. 542, 490 A.2d 912 (1985). We accept the trial judge's findings with respect to the credibility of witnesses and the weight to be accorded their testimony. *Arcadia Co., Inc. v. Peles, supra; Ecksel v. Orleans Construction Co.,* 360 Pa.Super. 119, 519 A.2d 1021 (1987); *Delahanty v. First Pennsylvania Bank, N.A.,* 318 Pa.Super. 90, 114, 464 A.2d 1243, 1255 (1983), citing *In Interest of Black,* 273 Pa.Super. 536, 417 A.2d 1178 (1980) and *Commonwealth ex rel. Pruss v. Pruss,* 236 Pa.Super. 247, 344 A.2d 509 (1975); *Bigham v. Wenschhof,* 295 Pa.Super. 146, 149, 441 A.2d 391, 392 (1982). It is not the province of the appellate court to find facts or substitute its judgment for that of the trial judge. *Delahanty v. First Pennsylvania Bank, N.A., supra* at 114, 464 A.2d at 1255, citing *School District of City of Harrisburg v. Pa. Interscholastic Athletic Ass'n.,* 453 Pa. 495, 499, 309 A.2d 353, 356 (1973). See also: *Hanna v. Key Computer Systems, Inc.,* 386 Pa.Super. 8, 12, 562 A.2d 327, 329 (1989), *allocatur denied,* 524 Pa. 628, 574 A.2d 69 (1989). The test is not whether the appellate court would have reached the same result on the evidence presented but rather, after due consideration of the evidence which the

trial court found credible, whether the trial court could reasonably have reached its conclusion.

■■■ The burden was on the appellant-claimant to prove defendant's paternity by a fair preponderance of the evidence. *Tyler v. King,* 344 Pa.Super. 78, 96, 496 A.2d 16, 25 (1985); 23 Pa.C.S. § 4343(a). The testimony relied upon by the claimant to prove paternity, in addition to her own, was elicited from Pauline Stahli, the child's mother. This testimony the trial court rejected as being incredible. In addition, however, the claimant offered the results of red blood cell and HLA testing performed on the child, his mother and the defendant. The written laboratory test which, by stipulation, was received without explanation by expert testimony showed that defendant's paternity could not be excluded and that there existed a 99.99% probability that he was the father. Appellant argues that this evidence entitled the claimant to a judgment n.o.v.

In *Smith v. Shaffer,* 511 Pa. 421, 515 A.2d 527 (1986), an action to determine paternity, the jury had been presented with conflicting testimony and the results of red blood cell and HLA tests. These tests established a 99.99% probability that the defendant was the biological father. The jury, nevertheless, returned a verdict for the defendant. The trial court, en banc, held that the verdict was against the weight of the evidence and granted a new trial. The Superior Court affirmed. The Supreme Court held that the award of a new trial was error. The Court reasoned:

The court en banc's reassessment of credibility was obviously influenced by the weight it placed upon the opinion of appellee's expert witness (99.99% probability that appellant was the father), since that court found the award of a new trial was imperative "in light of the strong scientific evidence supporting the [appellee's] claim and the lack of credible testimony to the contrary...." Lower court slip op. at 3. It was improper for the court to elevate the opinion of the expert witness to such lofty heights in light of the jury's finding that appellant's and his witness' testimony were credible. As

this Court stated in *Tinicum Real Estate Holding Co. v. Commonwealth Department of Transportation*, 480 Pa. 220, 232, 389 A.2d 1034, 1040 (1978), "in determining the facts the jury has the right to believe all, some of, or none of the experts' testimony. Furthermore, it was the jury's duty to consider all of the facts and circumstances established by the trial evidence...."

The Superior Court has had prior occasions to consider the reliability and probative value of HLA tests, and has held them to be admissible in a paternity action not only to disprove paternity but as affirmative evidence to prove paternity. *See e.g., Turek v. Hardy*, 312 Pa.Super. 158, 458 A.2d 562 (1983); *Miller v. Kriner*, 341 Pa.Super. 293, 491 A.2d 270 (1985); *Connell v. Connell*, 329 Pa.Super. 1, 477 A.2d 872 (1984). However, the Superior Court has held that, in line with the general rule in this Commonwealth that expert opinion testimony is not conclusive and must be considered in conjunction with all of the evidence introduced at trial, HLA tests are not conclusive of paternity. *Connell v. Connell, supra*, 329 Pa.Super. at 477 A.2d 874-75. In *Turek v. Hardy, supra*, that court stated: "We emphasize, however that our holding is limited to the conclusion that HLA blood test results may be introduced as some evidence of paternity. We do not hold that this evidence is conclusive." 312 Pa.Super. 158, 458 A.2d at 565. We approve of the Superior Court's determinations that HLA blood tests are not conclusive evidence of paternity.

*Id.* 511 Pa. at 425–427, 515 A.2d at 529 (footnotes omitted). We conclude, in reliance on this opinion, that the trial court did not err when it denied appellant's motion for judgment n.o.v.

 Appellant argues that, pursuant to a 1989 amendment to the Domestic Relations Code at 23 Pa.C.S. § 4343(c)(2), the results of blood tests must be considered prima facie evidence of paternity. Because the defendant-appellee did not testify, she suggests, the court should have found paternity. However, appellant misreads the statute.

Section 4343(c)(2) states that, *"Genetic test results* shall be considered prima facie evidence of paternity." (emphasis added). The trial court in the instant case did not have genetic test results to consider.

Genetic tests differ significantly from the blood cell antigen typing performed in the instant case. Genetic testing provides direct evidence of the extent to which an alleged father and child actually share genetic material. See: American Medical Association, Medical Dictionary, pp. 774–775 (Random House, 1989). From the results of genetic tests, adequately and accurately performed, it is possible to determine that a particular man did in fact father a particular child.

An affirmative finding of paternity with the same certainty cannot be obtained from blood cell antigen tests, such as were performed in the instant case. Typing red and white blood cell antigens reveals the extent to which an alleged father and child share selected cellular, biochemical properties. The results of such tests provide circumstantial evidence of genetic similarity. From the results of blood cell antigen tests it is sometimes possible to deduce, with a high degree of reliability, that an alleged father is not the biological father. See: 42 Pa.C.S. § 6136; *Tyler v. King, supra* at 86, 496 A.2d at 20 (1985), citing *Hummel v. Smith,* 301 Pa.Super. 276, 286–287, 447 A.2d 965, 970 (1982) (Beck, J., concurring). It is never possible from the same tests, however, to deduce with the same certainty that a particular man fathered a particular child. See: *Smith v. Shaffer, supra,* 511 Pa. at 426, 515 A.2d at 529, citing *Connell v. Connell,* 329 Pa.Super. 1, 7, 477 A.2d 872, 874–875 (1984). When blood cell typing fails to exclude paternity, a statistical calculation can be made to estimate the likelihood of paternity.

> This calculation entails the use of a probability formula known as the "Essen–Moller" version of the "Bayes' Theorem." A simplified version of this formula may be summarized as follows: The ratio of the likelihood that the accused contributed certain genetic characteristics

identified in the child, to the likelihood that one other "random man" contributed them. The "random man" variable is derived from the estimated frequencies of the particular characteristics in the relevant population. The ratio yielded by the Bayes' formula, called the "paternity index," is converted into a percentage value, "the likelihood of paternity," which is then presented to the trier of facts.

Case Comment, **Human Leukocyte Antigen Test Results Are Admissible in Paternity Cases to Show the Likelihood of Paternity.** *Turek v. Hardy*, 312 Pa.Super. 158, 458 A.2d 562 (1983), 88 DICK.L.REV. 565, 567–69 (1984) (footnotes omitted).

*Olson v. Dietz*, 347 Pa.Super. 1, 5–6, 500 A.2d 125, 127 (1985). Even where this calculation yields a high probability of paternity, there nevertheless exists in the population of men having the same racial-ethnic background a number of men who, upon testing, will yield the same or similar results.

Blood cell typing provides some evidence from which a factfinder may make an affirmative finding of paternity. *Olson v. Dietz, supra,* 347 Pa.Superior Ct. at 5, 500 A.2d at 127; *Turek v. Hardy,* 312 Pa.Super. 158, 163, 458 A.2d 562, 564 (1983). However, the result is not prima facie evidence of paternity. Before the result of a blood test becomes probative of affirmative paternity, the trier of fact must be able to conclude that the mother and alleged father engaged in the reproductive act at a relevant time. See: *Olson v. Dietz, supra,* 347 Pa.Superior Ct. at 8, 500 A.2d at 129. Blood test results are not a substitute for this threshold determination. In the instant case, the trial court rejected testimony that the defendant had had sexual relations with the child's mother at a relevant time. Therefore, the blood test results alone did not provide the trial court with conclusive, or even prima facie, evidence that appellee was Charles' father.

Affirmed.