653 A.2d 1

Luis OLMO and Antonio Disla

v.

Pedro MATOS and Magdalia Matos, h/w.

Luis OLMO and Antonio Disla

v.

REALTY WORLD–CARBERRY & HAAS, INC.

Appeal of Pedro MATOS and Magdalia Matos.

Superior Court of Pennsylvania.

Agreed Oct. 20, 1994.

Filed Dec. 2, 1994.

Reargument Denied Feb. 9, 1995.

Jay Meyers, Philadelphia, for appellants.

Mark D. Mungello, Clementown, NJ, for Olmo, appellees.

Before CIRILLO, OLSZEWSKI and HESTER, JJ.

CIRILLO, Judge:

This is an appeal from an order of the Court of Common Pleas of Philadelphia County denying appellants Pedro and Magdalia Matos' post-trial motions. We affirm.

On July 15, 1988, appellants Pedro and Magdalia Matos (the Sellers) executed an Agreement of Sale (the Agreement) with Luis Olmo and Antonio Disla (the Buyers) for property located at 1840 South 5th Street, Philadelphia. The purchase price of the property and buildings situated thereon was $40,000.00. On the date of execution, Buyers paid to Sellers a deposit in the amount of $4,000.00, to be held in an interest bearing escrow account with Realty World–Carberry and Haas, Inc. (the Realtor). The Agreement stated that time was of the essence, and, particularly, that settlement was to be made on or before October 14, 1988. On or about August 2, 1988, Buyers made a payment to Sellers personally in the amount of $20,000.00 on account of the purchase price.[1]

Via an oral lease between Buyers and Sellers, Buyers were permitted to occupy the subject premises prior to settlement in order to commence the operation of a general/food store. In return, Buyers were required to make rental payments to the Sellers in the amount of $350.00 per month.

---

1. This fact is evidenced by a receipt dated August 2, 1988, and signed by one of the Sellers, Pedro Matos.

The parties did not complete the sale of the property pursuant to the terms of the Agreement, and Buyers filed separate actions against Sellers and Realtor in the Court of Common Pleas of Philadelphia County, seeking to recover the $4,000.00 deposit held in escrow by Realtor, and the $20,000.00 paid on account of the purchase price to Sellers, respectively. Sellers filed a counterclaim for compensation for breach of the Agreement, and damages caused to the property while it was in possession of Buyers pursuant to the oral lease agreement. The two matters were consolidated for purposes of trial.

A two-day bench trial was held before the Honorable John J. Chiovero. With respect to the monies tendered by Buyers, Judge Chiovero awarded $20,000.00 to Buyers, and $4,000.00 to Sellers. With respect to Sellers' counterclaim for damages, Judge Chiovero awarded Sellers $7,357.63.[2] In sum, Judge Chiovero's order required Sellers to refund $12,642.37 to Buyers, approximately one-half the amount Buyers tendered to Sellers. Sellers filed post-trial motions, which were denied. This timely appeal followed. On appeal, Sellers present four issues for our consideration:

(1) Where the buyers fail to complete the purchase by failing to pay in the money required, may the sellers retain the deposits as liquidated damages?

(2) Where the [buyers] fail[ ] to appear in Court, are they entitled to an award?

(3) May the [buyers] assign their interest in the real estate and agreement of sale to one of their wives?

(4) Did the [sellers] establish the damage done by [buyers] and the loss of rents incurred?

Initially, we note our standard of review in this case. The role of an appellate court in reviewing the trial court's final judgment is to determine whether the findings of the

2. Judge Chiovero based this award on the following:

| | $5,000.00 | – | lost rental income |
|---|-----------|---|--------------------|
| + | $2,357.63 | – | stipulated amount of materials purchased by Sellers |
| | $7,357.63 | | |

trial court are supported by competent evidence and whether the trial court committed error in the application of law; findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent error of law or abuse of discretion. *Stahli v. Wittman,* 412 Pa.Super. 281, 603 A.2d 583 (1992); *Reuter v. Citizens & Northern Bank,* 410 Pa.Super. 199, 599 A.2d 673 (1991); *Porter v. Kalas,* 409 Pa.Super. 159, 597 A.2d 709 (1991). When this court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected. *Short v. Metropolitan Life Ins. Co.,* 339 Pa.Super. 124, 488 A.2d 341 (1985).

■ Generally, there are three remedies available to a seller when a buyer defaults under an agreement of sale for real property. *Bafile v. Borough of Muncy,* 527 Pa. 25, 30, 588 A.2d 462, 464 (1991) (citing *Trachtenburg v. Sibarco Stations, Inc.,* 477 Pa. 517, 384 A.2d 1209 (1978)). First, a seller can sue for damages, measured by the contract price minus the fair market value at the time of the breach, less any payments already tendered. Second, a seller may sue for specific performance of a contract, provided that the seller can demonstrate that without this equitable relief he or she will not be in the same position as if the buyer had not breached the contract. Third, a seller can sue for the purchase price of the property as stated in the agreement and other damages, conditioned upon the transfer of the property. *Id.*

Paragraph 14 of the Agreement is entitled **DEFAULT-TIME OF THE ESSENCE,** and provides in pertinent part:

Should the Buyer:

(a) Fail to make any additional payments as specified in paragraph # 3,[3] or

\* \* \* \* \* \*

---

**3.** Although paragraph 3 of the Agreement reads that $36,000.00 was to be paid on the date of settlement, this figure clearly does not reflect the

then in such case, all deposit money *and other sums paid by the Buyer on account of the purchase price,* whether required by the agreement or not, may be retained by the Seller:

(1) On account of the purchase, or

(2) As monies to be applied to the Seller's damages, or

(3) As liquidated damages for such breach,

as the Seller may elect, and in the event that the Seller elects to retain the monies as liquidated damages ..., the Seller shall be released from all liability or obligations and this agreement shall be NULL AND VOID and all copies shall be returned to the Seller's agent for cancellation.

(emphasis added). For reasons that are not readily apparent, Buyers failed to tender the balance of the purchase price on the date scheduled for settlement. The Sellers retained the amounts already tendered, $4,000.00 and $20,000.00, as liquidated damages.

 Traditionally, a seller may elect to retain deposit money as liquidated damages pursuant to a contractual stipulation, as did Seller in this case, insofar as the amount retained was the sum agreed upon. *Tudesco v. Wilson,* 163 Pa.Super. 352, 60 A.2d 388 (1948). In fact, " '[n]o rule in respect to the contract (for the sale of real estate) is better settled ... than this: that the party who has advanced money, or done an act in part performance of the agreement, and then stopped short and refuses to proceed to its ultimate conclusion, the other party being ready and willing to proceed and fulfill all his stipulations according to the contract, will *not be permitted to recover back what has thus been advanced or done.*' " *Sanders v. Brock,* 230 Pa. 609, 614, 79 A. 772, 773 (1911) (quoting *Hansbrough v. Peck,* 72 U.S. (5 Wall.) 497, 506, 18 L.Ed. 520 (1866)).

 A liquidated damages clause is not enforceable, however, where such enforcement would amount to a penalty. *See, e.g., Laughlin v. Baltalden, Inc.,* 191 Pa.Super. 611, 159

$20,000.00 already tendered by Buyers to Sellers on account of the purchase price.

A.2d 26 (1960); *Kraft v. Michael*, 166 Pa.Super. 57, 70 A.2d 424 (1950). Whether a provision for the retention of cash payments amounts to a penalty must be determined from the language of the contract, the intentions of the parties, the subject of the contract and its surroundings, the ease or difficulty in measuring the amount of damages, and the sum stipulated. *Laughlin*, 191 Pa.Super. at 618, 159 A.2d at 29; *Kraft*, 166 Pa.Super. at 58–60, 70 A.2d at 425–26.

■ Here, the Agreement provided that, in the event of a default, the Seller may retain as liquidated damages "all deposit money *and other sums paid by the Buyer on account of the purchase price."* As stipulated, Buyers paid the initial deposit in the amount of $4,000.00 at the execution of the Agreement. Shortly thereafter, Buyers tendered to Sellers $20,000.00 in cash, on account of the purchase price. It would be unreasonable and unconscionable to conclude that the parties intended the whole amount tendered, sixty percent of the total purchase price, to be retained as liquidated damages in the event of default. *Cf. Laughlin, supra,* 191 Pa.Super. at 618, 159 A.2d at 29 (holding that retention of deposit amounting to nine percent of purchase price is not a penalty); *Kraft, supra,* 166 Pa.Super. 57, 70 A.2d 424 (holding that retention of deposit and payment amounting to ten percent of purchase price is not a penalty). We find, therefore, that the trial court did not err or abuse its discretion in ordering Sellers to return the unused [4] portion of the $20,000.00 payment to Buyers. *Stahli, supra,* 412 Pa.Super. 281, 603 A.2d 583.

■ Next, Sellers contend that Buyers failed to appear in court and improperly assigned their interests to Rose Olmo, wife of Luis Olmo. We disagree.

Although the Buyers commenced the underlying action(s) in their names, Rule 2004 of the Pennsylvania Rules of Civil

4. As noted above, the net result of the trial court's awards amounted to a judgment in favor of Buyers in the amount of $12,642.37: $20,000.00 (amount tendered to Sellers) less $7,357.63 (amount awarded to Sellers on their counterclaim for damages and loss of rental income). Via a separate order, Realtor was ordered to relinquish the $4,000.00 being held in escrow to Buyers to partially satisfy the judgment against Sellers.

Procedure permits a plaintiff to transfer his or her interest therein to another, and continue the action in the name of the original parties. Pa.R.C.P. 2004. Here, both Buyers assigned their respective interests in this case to Rose Olmo via a written assignment, which was notarized and filed with the Prothonotary of Philadelphia County. These actions amount to an "equitable assignment" of the Buyers' causes of action.

An "equitable assignment" is any order, writing, or act by the assignor which makes an absolute appropriation of a chose in action or fund to the assignee's use with the intention to transfer a present interest, though not amounting to a legal assignment. *In re Purman's Estate,* 358 Pa. 187, 56 A.2d 86 (1948). Because of their unavailability, the Buyers chose Rose Olmo to stand in their stead. Contrary to Sellers' beliefs and contentions, consideration for such an assignment is not necessary, because a chose in action may be the subject of a gift. *See Ertel v. McCloskey,* 167 Pa.Super. 120, 74 A.2d 652 (1950).

Finally, in the "Statement of Questions Involved" portion of their brief, Sellers claim that the damages awarded on their counterclaim are inadequate. Sellers, however, completely fail to develop this argument in the "Argument" portion of their brief. Sellers fail to set forth the relevant facts and any relevant authority in support of their last claim. As such, Sellers have waived their last issue. Pa.R.A.P. 2119(b). *See also Harvilla v. Delcamp,* 521 Pa. 21, 555 A.2d 763 (1989); *Commonwealth v. Jackson,* 494 Pa. 457, 431 A.2d 944 (1981); *Curson v. West Conshohocken Mun. Auth.,* 148 Pa.Commw. 386, 611 A.2d 775 (1992).

Order affirmed.