680 A.2d 877

COMMONWEALTH of Pennsylvania

v.

Peter George LUKTISCH, Appellant.

Superior Court of Pennsylvania.

Argued May 21, 1996.

Filed June 25, 1996.

Reargument Denied Sept. 6, 1996.

Jack I. Lowe, Jr., Public Defender, Clarion, for appellant.

William E. Hager, III, District Attorney, New Bethlehem, for Com., appellee.

Before CIRILLO, President Judge Emeritus, and DEL SOLE and OLSZEWSKI, JJ.

OLSZEWSKI, Judge.

On August 29, 1995, a jury found appellant Peter George Luktisch guilty of rape and statutory rape. These convictions stem from an incident with his step-daughter, D.G., who was eleven years old at the time. This meritless appeal follows the imposition of an eighty-two month to twenty year prison sentence.

Initially, Luktisch alleges that the trial court erred in allowing T.L. (D.G.'s step-sister and Luktisch's natural daughter) to testify concerning sexual abuse Luktisch had also inflicted upon her. T.L., who was twenty-nine years old at the time of trial, testified that Luktisch "started touching her improperly when she was 5 and that between the ages of 5 and 8 he started having oral sex with her, and at age 8 [Luktisch] started having sexual intercourse with her." Opinion, 12/28/95 at 7. When T.L. was ten years old, sometime in 1976 or 1977, her mother moved her away from appellant and the sexual assaults ended. *Id.*

■ First, Luktisch contends that "the uncharged acts committed on [T.L.] were too remote from the charged crime to be properly admitted into evidence under the common scheme, plan, design or course of conduct exception to the general rule that evidence of uncharged acts is inadmissible against a defendant." Appellant's brief at 9. We disagree. Admittedly, the atrocities committed upon T.L. occurred fourteen years prior to those committed upon D.G. Focusing solely upon this time lapse, however, is improper. At trial, C.G. (D.G.'s natural sister and Luktisch's step-daughter) testified that she, too, had been victimized by appellant. C.G., who was twenty-one years old at the time of trial, testified that in 1982, when she was eight or nine years old, Luktisch started touching her breasts and vagina. This contact progressed to oral sex and, finally, when she was eleven years old, Luktisch began engaging her in sexual intercourse. This abhorrent contact continued until 1990, when C.G. moved away from appellant. Thus, at most, six years elapsed between the time Luktisch's assaults on T.L. ended and the time he turned his depraved intentions upon C.G. This is the time period we must focus

upon. *See Commonwealth v. Smith*, 431 Pa.Super. 91, 94–96, 635 A.2d 1086, 1088 (1993) ("the issue of remoteness under the common plan exception is determined by analyzing the time involved between each of the criminal incidents"). Was this six year time period excessive under the circumstances? We think not.

■ Our Supreme Court has recently stated that "[w]hile remoteness in time is a factor to be considered in determining the probative value of other crimes evidence under [the theory of common scheme, plan or design], the importance of the time period is inversely proportional to the similarity of the crimes in question." *Commonwealth v. Miller*, 541 Pa. 531, 548–50, 664 A.2d 1310, 1319 (1995). *See also Smith, supra.* In the case at hand, Luktisch's tactics concerning his young victims were nearly identical. The similarity of appellant's approach to victimizing the children was aptly addressed by the trial court as follows:

> The acts committed upon [D.G.], [C.G.], and [T.L.] were strikingly similar. The three victims were near the same age when [Luktisch] molested them; they all had the relationship of daughter or step-daughter to [Luktisch]; all three were living with [Luktisch] when the acts occurred; and the nature of the acts were almost identical. The progression of the acts performed on each victim was similar; improper touching first, then oral sex, then sexual intercourse. It is true that [D.G.] only made passing references to acts performed upon her by the [appellant] other than the singular act of sexual intercourse for which the [appellant] was charged and convicted, but [C.G.] and [T.L.] gave descriptions of how [Luktisch's] molesting them had progressed. Certainly what [D.G.] did describe fits squarely into the overall common scheme and course of conduct as it progressed from [T.L.], to [C.G.], to [D.G.].

Opinion, 12/28/95 at 9–10. Since the pattern of molestation committed upon his young victims was so distinct, especially concerning T.L and C.G., we cannot find that the six-year layoff between the victimization of T.L. and C.G. was excessive as to render T.L.'s testimony overly prejudicial. *See Miller,*

*supra.* Consequently, we find no trial court error and Luktisch's first issue on appeal must fail.[1]

■ Next, Luktisch contends that the trial court should not have allowed T.L. to testify because, in doing so, the trial court reversed its own previous ruling. Prior to trial, the trial court ruled that since C.G.'s testimony alone would establish a common plan, scheme or design, T.L.'s testimony would have been cumulative and, thus, its prejudicial effect outweighed its probative value. At trial, however, the credibility of D.G. and C.G. was severely undermined when it was revealed that their mother had threatened to "get her daughters to swear that [their former landlord] had molested them" if the landlord attempted to prosecute them for back rent. When the believability of C.G. and D.G. became crippled, the Commonwealth's need to present T.L.'s evidence under the common plan exception became inflated. At that point, the trial court did not err in determining that T.L.'s testimony was more probative than prejudicial, and, therefore, it was entirely proper to allow T.L. to testify. *See generally Commonwealth v. Frank*, 395 Pa.Super. 412, 421–23, 577 A.2d 609, 614 ("Commonwealth's need to present evidence under the common scheme exception" must be examined to determine whether the probative value of such evidence is outweighed by its prejudicial impact), *alloc. denied*, 526 Pa. 629, 584 A.2d 312 (1990).

■ Next, Luktisch alleges that the Commonwealth failed to establish the date of D.G.'s rape with reasonable specificity;

1. We note that Luktisch also claims that he was overly prejudiced when T.L. testified that she had previously reported her molestation in order to prevent Luktisch from perpetrating the same crimes against her half-sister, A.L. This bald allegation of reversible error is not included in Luktisch's statement of questions presented for review, nor has appellant developed any argument or even cited to any relevant authority in support of this contention. As such, we deem this issue waived. *See* Pa.R.A.P. 2119; *Olmo v. Matos*, 439 Pa.Super. 1, 2–3, 653 A.2d 1, 5 (1994) (failure to support issue with relevant facts and authority constitutes waiver); *Commonwealth v. Melson*, 432 Pa.Super. 1, 25 n. 7, 637 A.2d 633, 645 n. 7 (failure to develop an argument constitutes waiver of claim), *alloc. denied*, 538 Pa. 633, 647 A.2d 509 (1994); *Harkins v. Calumet Realty Co.*, 418 Pa.Super. 405, 412–14, 614 A.2d 699, 703 (1992) (issues not included in an appellant's statement of questions involved are waived).

and, therefore, his judgment of sentence should be reversed and he should be discharged. We disagree. It is true that "the date of the commission of the offense must be 'fixed with reasonable certainty.'" *Commonwealth v. Devlin*, 460 Pa. 508, 513, 333 A.2d 888, 890 (1975) (emphasis original) (citation omitted). Nevertheless, this rule has been somewhat relaxed when the victim is a child. In *Commonwealth v. Groff*, this Court stated that

> [w]hen a young child is a victim of crime, it is often impossible to ascertain the exact date when the crime occurred. He or she may only have a vague sense of the days of the week, the months of the year, and the year itself. If such children are to be protected by the criminal justice system, a certain degree of imprecision concerning times and dates must be tolerated.

378 Pa.Super. 353, 364, 548 A.2d 1237, 1242 (1988). Moreover, the *Groff* Court concluded that

> the Commonwealth must be allowed a reasonable measure of flexibility when faced with the special difficulties involved in ascertaining the date of an assault upon a young child. On the other hand, in order to ensure a fair trial for the defendant, the Commonwealth should conduct a thorough examination and come forward with any evidence which indicates when the alleged crime is most likely to have taken place.

*Id.* at 360–62, 548 A.2d at 1241.

In the case at hand, D.G. testified that Luktisch raped her when she was eleven years old, in either 1990 or 1991. N.T., 8/29/95 at 71. Moreover, she stated that the season was either spring or fall. *Id.* at 72. Further, she testified that, during the summer, she described the incident to Glenn Holabaugh, who was the family's landlord at the time. *Id.* at 78. Finally, Holabaugh testified that, sometime during the summer of 1990, D.G. revealed to him that Luktisch had been molesting her. *Id.* at 121.

Reading the testimony of D.G. and Holabaugh together, it becomes clear that Luktisch raped the child during the spring

of 1990. In light of D.G.'s age at the time of the attack, we do not find that this time period was so indefinite as to violate Luktisch's due process rights. *See Groff, supra* (judgment of sentence affirmed where Commonwealth established that the child victim had been sexually abused sometime during the "summer of 1985"). *See also Commonwealth v. Fanelli,* 377 Pa.Super. 555, 547 A.2d 1201 (1988) *(en banc), alloc. denied,* 523 Pa. 641, 565 A.2d 1165 (1989). Consequently, Luktisch's penultimate claim of error must fail.

■ Lastly, Luktisch alleges that the trial court erred in failing to grant a continuance due to excessive heat and noise in the court room. It is settled that "[t]he trial court has discretion over a request for continuance and a denial of such a request will not be reversed absent a showing of palpable and manifest abuse of the court's discretion." *Commonwealth v. Ah Thank Lee,* 389 Pa.Super. 201, 204, 566 A.2d 1205, 1206 (1989), *alloc. denied,* 527 Pa. 615, 590 A.2d 756 (1990). Here, the record reveals that a noisy PennDOT crew was working outside of the courtroom and that the trial took place on a hot August day. Nevertheless, we cannot find that these factors were so intrusive as to have deprived Luktisch of a fair trial. The trial court took extraordinary measures to insure that the jury and the parties would be as comfortable as possible. In fact, the judge moved the trial to a different courtroom on a higher floor so as to reduce the noise and provide air conditioned comfort. Moreover, we note that, when asked by the trial court, all jurors indicated that they had been able to hear the proceedings. N.T., 8/29/95 at 53. Finally, we note that the entire trial lasted only one day. In light of the above, we cannot conclude that the trial court manifestly abused its discretion in refusing to grant Luktisch a continuance. *See Ah Thank Lee, supra.* As such, appellant's final argument must join his others in failure.

Judgment of sentence affirmed.

DEL SOLE, J., dissents.

DEL SOLE, Judge, dissenting.

I must dissent from that portion of the Majority's Opinion that upholds the trial court's decision to allow T.L.'s testimony of events that occurred 18 years previously. I conclude that the initial decision of the trial court to exclude this testimony was correct. Subsequent credibility challenges to other witnesses should not affect that decision.