J-S08008-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MATTHEW ALAN MEJIA | |
| Appellant | No. 246 WDA 2016 |

Appeal from the Judgment of Sentence dated December 17, 2015
In the Court of Common Pleas of Venango County
Criminal Division at No(s): 483-2014

BEFORE: GANTMAN, P.J., FORD ELLIOTT, P.J.E., and SOLANO, J.

MEMORANDUM BY SOLANO, J.:                    **FILED JUNE 07, 2017**

Appellant Matthew Alan Mejia appeals from the portion of his judgment of sentence in which the trial court classified him as a sexually violent predator ("SVP") under the Sex Offender Registration and Notification Act ("SORNA"), 42 Pa.C.S. §§ 9799.10-9799.41. After careful review, we affirm.

The relevant factual and procedural history has been fully recounted by the trial court, and we have no reason to restate it. In short, Appellant, who was thirty years old at the time, repeatedly touched the buttocks of his sixteen-year-old niece, "pushed her on[to] a bed, made sexual remarks to her, and kissed and touched her vaginal area over her pants." Trial Ct. Op., 4/29/15, at 1. For this, Appellant pleaded guilty to one count of corruption of

a minor,[1] triggering an SVP evaluation. Appellant also pleaded guilty at another docket number to corruption of a minor[2] for having intercourse with the victim's then seventeen-year-old sister when Appellant was twenty-nine.[3] This latter conviction did not trigger an SVP evaluation and is not before us on appeal, but the facts relating to this conviction were considered by the Sexual Offenders Assessment Board and by the trial court when making the SVP determination in the instant case.

Appellant raises a single issue for our review: "Whether or not the Commonwealth met its burden of proof by clear and convincing evidence that the Appellant is a sexually violent predator as defined by statute?" Appellant's Brief at 4.

Our standard of review is well-settled:

> We do not weigh the evidence presented to the sentencing court and do not make credibility determinations. Instead, we view all the evidence and its reasonable inferences in a light most favorable to the Commonwealth. We will disturb an SVP designation only if the Commonwealth did not present clear and convincing evidence to enable the court to find each element required by the SVP statutes.

***Commonwealth v. Feucht***, 955 A.2d 377, 382 (Pa. Super. 2008) (citations omitted), ***appeal denied***, 963 A.2d 467 (Pa. 2008). "The standard of proof

---

[1] 18 Pa.C.S. § 6301(a)(1)(ii).

[2] 18 Pa.C.S. § 6301(a)(1)(i).

[3] The trial court's Pa.R.A.P. 1925(a) opinion incorrectly recounts that this offense took place over the course of three to four years, rather than two months.

governing the determination of SVP status, *i.e.*, 'clear and convincing evidence,' has been described as an 'intermediate' test, which is more exacting than a preponderance of the evidence test, but less exacting than proof beyond a reasonable doubt." **Commonwealth v. Meals**, 912 A.2d 213, 219 (Pa. 2006).

Appellant complains that the Commonwealth's expert witness testified that Appellant met "the diagnostic criteria for unspecified paraphilic disorder in the DSM 5,"[4] but never testified that Appellant actually suffered from unspecified paraphilic disorder. Appellant's Brief at 10. According to Appellant, the expert witness testified that it is possible to meet the diagnostic criteria for a condition but not suffer from that condition. **Id.** Appellant argues that the court therefore erred in concluding that because Appellant meets the diagnostic criteria for paraphilia he has a mental abnormality. **Id.** Appellant also complains that the trial court did not address Appellant's propensity to reoffend. **Id.** at 11.

Under SORNA, a person may be designated as an SVP because of "a mental abnormality or personality disorder that makes the individual likely to

---

[4] "DSM 5" refers to the fifth edition of the DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS. We have described the DSM as a "categorical classification system that divides mental disorders into types based on criteria sets with defining features" and have cited experts' opinions that "the DSM is an authoritative compilation of information about mental disorders and represents the best consensus of the psychiatric profession on how to diagnose mental disorders." **See Commonwealth v. Hollingshead**, 111 A.3d 186, 190 n.4 (Pa. Super. 2015) (citation omitted), **appeal denied**, 125 A.3d 1199 (Pa. 2015).

engage in predatory sexually violent offenses." 42 Pa.C.S. § 9799.12.[5] While the court must find that a defendant possesses such a mental abnormality by clear and convincing evidence, the defendant need not have any medical diagnosis of a specific psychological or psychiatric illness. **See Commonwealth v. Dengler**, 890 A.2d 372, 383 (Pa. 2005) ("The statute does not require proof of a standard of diagnosis that is commonly found and/or accepted in a mental health diagnostic paradigm"). Nor does an SVP assessment require a court to base its determination solely on an expert's opinion of a defendant's risk of reoffending. **See Hollingshead**, 111 A.3d at 190 (finding that the defense expert's focus on risk of recidivism was misplaced because proof of "the risk of re-offending is but one factor to be considered when making an assessment; it is not an independent element" (citation omitted)). Moreover, as an expert's diagnosis comprises evidence in and of itself, arguments that an expert's findings are "not fully explained, d[o] not square with accepted analyses of the disorder, or [are] simply erroneous," go to the weight, and not the sufficiency, of the evidence. **Meals**, 912 A.2d at 223-24.

---

[5] A "mental abnormality" is defined as a "congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." 42 Pa.C.S. § 9799.12. "Predatory" is defined as "[a]n act directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization." **Id.**

After thoroughly reviewing the record, the briefs of the parties, and the applicable law, we conclude that the well-reasoned opinion of the Honorable Robert L. Boyer comprehensively sets forth the clear and convincing evidence upon which the trial court relied when adjudicating Appellant an SVP. *See* Trial Ct. Op. at 3-4, 8-14 (finding (1) Commonwealth's expert witness testified that (a) Appellant suffered from unspecified paraphilic disorder[6] based on Appellant's relationship to his victims and the physical nature of the underlying offense, and (b) Appellant engaged in predatory behavior based on "the maintenance or promotion of

_____

[6] We note that the Commonwealth's expert witness testified as follows:

> [Appellant's counsel]: And you would agree that it's possible to meet what would be known as a diagnostic criteria for paraphilia, but not actually suffer from the condition correct?
>
> A: Yes.
>
> [Appellant's counsel]: Alright and in this case you determined that [Appellant] meets the criteria in the DSM, correct?
>
> A: Yes.
>
> [Appellant's counsel]: And based on him meeting the criteria, you then diagnosed him as **actually suffering** from it, is that right?
>
> A: I find that he does meet the criteria, **yes**.

N.T., 12/17/15, at 23-24 (emphasis added). This testimony belies Appellant's claim that the Commonwealth's expert did not testify that Appellant suffers from paraphilia.

multiple children, including the first victim being subjected to a relationship escalating to sexual intercourse"; (2) the Commonwealth's expert witness examined whether Appellant was at risk regarding re-offense; and (3) the Commonwealth's expert witness was credible). Accordingly, we affirm on the basis of the trial court's opinion. Because we do so, we instruct the parties to attach a copy of the trial court's April 29, 2015 opinion to any future pleadings that reference this Court's decision.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/7/2017

IN THE COURT OF COMMON PLEAS OF VENANGO COUNTY, PENNYSLVANIA

COMMONWEALTH OF PENNSYLVANIA :
:
: CR. No. 483-2014
v.  :
:
MATTHEW ALAN MEJIA, :
Defendant :



## OPINION OF COURT

AND NOW, this 29th day of April, 2016, the Court has before it Defendant's Concise Statement of Errors Complained of on Appeal,[1] filed in accordance with Pa. R.A.P. 1925. Pursuant to that same rule, the Court issues the following Opinion in support of its previous decision.

### Factual Background

The case stems from a sexual encounter between Defendant and one of his nieces, leading to two separate criminal cases, the above-captioned matter and criminal proceedings at CR. No. 603-2014.[2] In August 2014, the minor victim reported that her uncle, Defendant, while babysitting, pushed her on a bed, made sexual remarks to her, and kissed and touched her vaginal area over her pants. Additionally, Defendant had touched the victim's buttocks on multiple occasions walking through the house. The victim reported these actions and comments made her feel frightened. This report led to the criminal charges at CR. No. 483-2014, the case on appeal.

The actions leading to the charges at CR. No. 603-2014 are relevant in that they are factually similar and weigh in on the SORNA evaluation prepared by the Pennsylvania State Offenders Assessment Board ("SOAB") and Defendant's expert witness. At CR. No. 603,

---

[1] Defendant's pleading was actually titled "Concise Statement of Matters Complained of on Appeal;" however, the court notes that the Pennsylvania Supreme Court by its Order dated May 10, 2007, changed the title of Pa.R.A.P. 1925 to "Concise Statement of Errors Complained of on Appeal". *In re Order Adopting Amendments to Pa.R.A.P. 1925* (May 10, 2007).

[2] While involving another of Defendant's nieces, the sexual encounters at CR. No. 603-2014 did not trigger SORNA evaluation.

1



Defendant was charged and plead guilty to having sexual intercourse with another of his nieces. According to the affidavit of probable cause in that case, over a period of three to four years, Defendant kissed the victim, then later kissed her ears, touched her leg, and culminated in sexual intercourse, despite the victim saying they would get in trouble because Defendant was her uncle. These encounters were uncovered during the investigation of the actions leading to the current criminal proceedings at CR. No. 483-2014.

*Procedural History*

Defendant entered a guilty plea on December 15, 2014, in both the above-captioned case and the case at CR. No. 603-2014. The guilty plea included a designation under the Sex Offender Registration and Notification Act ("SORNA"). After several continuances related to Defendant's attempt to procure an expert in the matter, the SORNA hearing was held December 17, 2015. Defendant was found to be a sexually violent predator ("SVP"), and was sentenced on the same day. Defendant was sentenced to six (6) to twenty-four (24) months less a day in county jail, followed by five (5) years probation, on this case and the case at CR. No. 603-2014.

On December 23, 2015, Defendant filed a Post-Sentence Motion contesting the Court's determination of Defendant to be an SVP. The motion was denied. Subsequently, Defendant appealed to the Superior Court, with the Notice of Appeal being filed February 17, 2016. After this Court issued a Concise Statement Order under Pa. R.A.P. 1925, Defendant timely filed his Concise Statement of Errors Complained of on Appeal March 4, 2016.

On appeal, Defendant charges eight points of error by the trial court:

1. The trial court erred by finding the evidence proved by clear and convincing evidence that the defendant is a sexually violent predator as defined in Title 42 Section 9799.12.

2. The evidence presented was insufficient to establish that the defendant is a sexually violent predator as defined in Title 42 Section 9799.12

2

3. The finding by the court that the defendant is a sexually violent predator as defined in Title 42 Section 9799.12 was against the weight of the evidence.

4. The testimony by the defendant's expert should have been given more weight because he had the opportunity to review more information than the Commonwealth expert. He opined the defendant minimally met the diagnostic criteria for Paraphilia but stated that he did not believe the defendant suffered from that abnormality. He further opined the defendant was a very low risk to reoffend and would only need approximately 6 months of counseling.

5. The court erred when it stated that the defendants' expert's testimony made out that the defendant was a sexually violent predator as defined in Title 42 Section 9799.12.

6. The court erred when it stated that if the defendant met the diagnostic criteria for paraphilia then the defendant suffered from paraphilia even if the clinician felt the defendant did not suffer from paraphilia.

7. The court erred when it stated that regardless of how low the risk of reoffending by the defendant, that any risk of reoffending was sufficient to meet the definition of a sexually violent predator as defined in Title 42 Section 9799.12

8. It is clear the court's misconception of the law affected its ultimate ruling that the defendant was a sexually violent predator as defined in Title 42 Section 9799.12.

During the December 17, 2015 SORNA hearing, the Court received the testimony of Ms. Brenda Manno, M.S.W., L.S.W., a member of the Pennsylvania Sexual Offenders Assessment Board and licensed clinical social worker, and testified as an expert in the field of treatment of sex offenders. The Court also received testimony from Mr. Steven J. Reilly, MA, a licensed clinical psychologist, and testified as an expert in forensic psychology.

Ms. Manno testified that in her opinion, Defendant met the diagnostic criteria to be determined a sexually violent predator. While Ms. Manno was not afforded the opportunity to interview Defendant, she testified that the interview was not necessary, and that the record provides

3

ample information for making her determination. *Transcript of SORNA Hearing*, ("*Transcript*"), pp 8-9, ll 21-6. Ms. Manno discussed each of the factors listed in 42 Pa. C.S.A. § 9799.24(b), and how those factors were relevant in the instant case. Some factors, such as whether Defendant used excessive means to achieve the offense and whether Defendant displayed unusual cruelty, were not present and worked in Defendant's favor. However, other factors were present, such as the relationship (uncle-niece) between Defendant and his victims and the physical nature of the offense. Using these factors, Ms. Manno testified that she diagnosed Defendant with unspecified paraphilic disorder under the DSM-5.

Unspecified paraphilic disorder would qualify as the mental defect or personality order under the first prong of the SVP statutory definition, as Ms. Manno testified. She then found there was maintenance or promotion of multiple children, including the first victim being subjected to a relationship escalating to sexual intercourse. Ms. Manno testified this would qualify under the second prong of the SVP definition, and therefore she came to a conclusion within a reasonable degree of professional certainty that Mr. Mejia met the "criteria to be deemed a sexually violent predator under statute." *Transcript*, p 18, ll 15-17. Ms. Manno also addressed recidivism, stating that while the Static-99R is used for treatment and supervision purposes, it is not used by the SOAB, and that the statute directs the SOAB member to consider risk of recidivism as one of the factors. On cross examination, Ms. Manno testified that she did believe Defendant was a risk to reoffend. *Id.* at p 28, ll 9-23. Summarizing her testimony, Defendant met the diagnostic criteria of a sexually violent predator, and in Ms. Manno's professional opinion, Defendant should be characterized as such.

Mr. Reilly's testimony differed in that he did not find Defendant merited designation as a sexually violent predator. As Defendant admits in his Concise Statement, Mr. Reilly did find that

4

Defendant minimally met the requirements for paraphilia, his professional opinion is that Defendant does not actually suffer from the mental abnormality or defect. Mr. Reilly stated he reviewed Ms. Manno's report, criminal complaints, police reports, and interviewed with Defendant and others close to him. He also performed assessments using the Static-99R and the Minnesota Sexual Offender Screening Tool ("SOST").[3] He stated that he uses the Static-99R and Minnesota SOST because it gives him "more tools in the toolbox" and gives him more things to convince him the person is at risk. *Transcript*, pp 47-48, ll 17-8. In other situations, he uses other tools, and what he uses varies with the specific situation presented with the specific sex offender.

Mr. Reilly explained the variables in the Static-99R, using it to help him identify the risk of recidivism, but that it in recent research has "taken some real good hits as far as its reliability" though "it is still recognized as a valuable tool." *Transcript*, p 48, ll 22-25. It is also helpful in designing a treatment program. His score was a "1" on the Static-99R, which places him in a "low-risk level" for recidivism. The Minnesota SOST is an expanded and more adaptable tool, according to Mr. Reilly. On a range of -14 to +31, Mr. Reilly relayed Defendant scored a "-5" which is associated with low-risk. Mr. Reilly also performed a Psychological Assessment Screener, which is a "broad based assessment" to determine if the person suffers from any serious "access one diagnoses;" as Mr. Reilly described it, "a simple tool to screen for or rule out" serious psychological disorders. *Id.* at p 51, ll 1-15. Mr. Reilly testified it is helpful in making his determinations in that he would be hesitant to make a determination without knowing if the person had a serious co-occurring disorders, such as mental illness or substance abuse.

Based on his review of the files, the administration of the tests described above, and the various interviews he conducted, Mr. Reilly was not in agreement with Ms. Manno that Defendant

---

[3] The Court notes that under the testimony given by Mr. Reilly, there is some significant overlap in the factors seen in the Static-99R and Minnesota SOST, and the statutory factors in § 9799.24(b).

5

warranted designation as a sexually violent predator. While Mr. Reilly agreed with Ms. Manno that Defendant met the criteria under the DSM-5, he feels the DSM-5 is more of a "guide" and a "moderately good tool." *Transcript*, p 52, ll 1-13. In "looking deeper into the actual diagnosis," Mr. Reilly found it more appropriate to "use some discretion" and look at the breakdown of the disorder. The more he looked into the disorder, he determined Defendant was more in line with "child abuse confirmed" which is also in the DSM-5. Though Defendant met the minimal criteria, Mr. Reilly did not find that it was the appropriate diagnosis, under his analysis of the disorder. *Id.* at p 52, ll 14-19. In summation, he does not agree with Ms. Manno's recommendation that Defendant is a sexually violent predator.

*Analysis*

**Standard to Determine Defendant as a Sexually Violent Predator**

Determination of whether or not a defendant warrants designation as a sexually violent predator rests with the Court, and the burden falls on the Commonwealth to prove Defendant meets the criteria.

> "To deem an individual a sexually violent predator, the Commonwealth must first show [the individual] 'has been convicted of a sexually violent offense as set forth in [section 9799.14]....'" *Commonwealth v. Askew*, 907 A.2d 624, 629 (Pa.Super.2006), appeal denied, 919 A.2d 954 (Pa. 2007). *See also* 42 Pa.C.S.A. § 9799.12. "Secondly, the Commonwealth must show that the individual has 'a mental abnormality or personality disorder that makes [him] likely to engage in predatory sexually violent offenses.'" *Askew*, supra. When the Commonwealth meets this burden, the trial court then makes the final determination on the defendant's status as an SVP. *Commonwealth v. Kopicz*, 840 A.2d 342, 351 (Pa. Super. Ct. 2003).

*Com. v. Prendes*, 97 A.3d 337, 357-58 (Pa. Super. Ct. 2014) appeal denied, 105 A.3d 736 (Pa. 2014) (citations reformatted). SVP status, therefore, does not require proof beyond a reasonable doubt; the court decides SVP status upon a show of clear and convincing evidence that the offender

6

is, in fact, an SVP. *Prendes*, 97 A.3d at 358, *citing Commonwealth v. Killinger*, 888 A.2d 592, 600 (Pa. 2005).

The first prong of the two-part statutory definition of a SVP requires the SOAB member to use the factors enumerated in 42 Pa. C.S.A. § 9799.24(b).

\* \* \*

**(b) Assessment.**—Upon receipt from the court of an order for an assessment, a member of the board ... shall conduct an assessment of the individual to determine if the individual should be classified as a sexually violent predator. The board shall establish standards for evaluations and for evaluators conducting the assessments. An assessment shall include, but not be limited to, an examination of the following:

(1) Facts of the current offense, including:

    (i) Whether the offense involved multiple victims.

    (ii) Whether the individual exceeded the means necessary to achieve the offense.

    (iii) The nature of the sexual contact with the victim.

    (iv) Relationship of the individual to the victim.

    (v) Age of the victim.

    (vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

    (vii) The mental capacity of the victim.

(2) Prior offense history, including:

    (i) The individual's prior criminal record.

    (ii) Whether the individual completed any prior sentences.

    (iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

    (i) Age.

    (ii) Use of illegal drugs.

    (iii) Any mental illness, mental disability or mental abnormality.

7

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

\* \* \*

42 Pa. C.S.A. § 9799.24(b). The second prong requires the SOAB member to find some sort of predatory behavior.

*Commonwealth v. Dixon*, 907 A.2d 533 (Pa. Super. Ct. 2006), is instructive for several issues raised in Defendant's Concise Statement. In *Dixon*, the Superior Court characterized the Commonwealth's expert as "testif[ying] at length regarding the statutory factors set out in Section 9795.4(b). The Exert recited each factor, described its application in Appellant's case, and noted whether it militated in favor of or against Appellant's interest," and noted how some factors worked against Appellant, and others in favor. The record demonstrated the expert was "thorough and meticulous in his explanation of factors" which lead to his conclusion that Appellant suffered from paraphilia NOS and was likely to re-offend. *Id.* Further, the Superior Court specifically disagreed with Appellant's assertion that the expert's focus on the two factor test, mental abnormality and predatory behavior, lacked an inquiry into the likelihood of reoffense.

As is laid out above, *supra, "Procedural History"*, Ms. Manno evaluated each of the factors above, stating whether or not a factor was present and whether that weighed in favor or against determination of Defendant to be a sexually violent predator. Mr. Reilly testified that under the Static-99R and Minnesota SOST, he weighed a variety of factors, some of which were analogous to the factors in § 9799.24(b), and that while Defendant may have met the minimal diagnostic criteria under the DSM-5 for paraphilia, he believed that was not the proper diagnosis. This establishes what lies at the heart of much of Defendant's appeal: the relative credibility of the witnesses.

8

A determination as to the credibility of witnesses is within the exclusive province of the trier of fact who is free to believe all, part, or none of a witness' testimony. *Smith v. Penbridge Associates, Inc.*, 655 A.2d 1015, 1019-20 (Pa. Super. Ct. 1995). *citing Stahli v. Wittman*, 603 A.2d 583 (Pa. Super. Ct. 1992), *appeal denied*, 617 A.2d 1275 (Pa. 1992). This concept is applicable not only to "lay witnesses" but also expert witnesses.

> In determining the credibility of an expert witness and the weight of the testimony, the fact finder treats the expert as any other witness, and applies the same standards of credibility that would be applied to any other witness. The fact finder may believe all or none of the expert's testimony, or part of one expert's testimony and part of another expert's testimony. The fact finder should consider the method by which the expert reached his or her conclusion. The fact finder is not bound to accept the expert's testimony merely because it is the testimony of someone having special skill or knowledge. All the components that the expert considered are matters which the fact finder considers in determining the persuasive quality of the testimony. The fact finder weighs the opinions of the experts against one another to determine credibility and weight.

*Appeal of Avco Corp.*, 515 A.2d 335, 338 (Pa. Cmwlth. Ct. 1986).

In applying these standards, the Court reached the conclusion that Ms. Manno, the Commonwealth's witness, was more credible. This was due in part to her recitation of the factors as enumerated by statute, and general adherence to the statutory definitions, while Mr. Reilly deviated from the statute and used different standards, such as the Static-99R and Minnesota SOST. Additionally, much of Mr. Reilly's testimony seemed to center on the risk of recidivism, which is only one factor in SVP analysis. *See, infra*, "Court Error in Finding and Weighing Risk of Reoffending in Determination of SVP Status." Mr. Reilly did address the diagnosis under the DSM-5, opining that while Defendant minimally met the diagnostic criteria for paraphilia, such a diagnosis was not appropriate, and the more applicable diagnosis was child abuse confirmed. However, the Court is of the opinion that Ms. Manno's testimony was more than sufficient to support the Court's finding that Defendant is a sexually violent predator. Her testimony is similar

9

to that as presented in *Dixon*, which the Superior Court found to be adequate to support a finding that the appellant was a sexually violent predator. The Court determined Ms. Manno's testimony to be more credible than that of Mr. Reilly, and should be given more weight than Mr. Reilly's contrary testimony.[4]

**Adequacy of the Evidence**

Defendant raises three issues which can broadly be described as attacking the adequacy of the evidence at the SVP hearing. The first point argues that the Court erred in finding "clear and convincing evidence" that Defendant is a sexually violent predator. The second point argues that "the evidence was insufficient to establish" that Defendant warrants SVP status. Point three argues the finding of SVP status was "against the weight of the evidence."

> The standard of proof governing the determination of SVP status, *i.e.,* clear and convincing evidence, has been described as an intermediate test, which is more exacting than a preponderance of the evidence test, but less exacting than proof beyond a reasonable doubt.... The clear and convincing standard requires evidence that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.

*In re R. Y., Jr.,* , 957 A.2d 780, 784 (Pa. Super. Ct. 2008), *quoting Commonwealth v. Meals,* 912 A.2d 213, 219 (Pa. 2006).

When challenging the sufficiency of the evidence in criminal cases the standard of review is that we evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Commonwealth v. Widmer,* 744 A.2d 745, 751 (Pa. 2000). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the

---

[4] The Court will refer to this section below, when the analysis of Defendant's complaints on appeal require an explanation of the relative credibility of the witnesses.

commission thereof by the accused, beyond a reasonable doubt." *Commonwealth v. Brewer*, 876 A.2d 1029, 1032 (Pa. Super. Ct. 2005).

Applying this standard to the instant case, the Court would apply the standard towards the Court's determination of SVP status, as opposed to a criminal conviction. While noting that the standard for determination of SVP status is only "clear and convincing" evidence, as opposed to the "beyond a reasonable doubt" standard applied to criminal determinations, it is a relatively straightforward task to test the sufficiency of the evidence in the instant case.

Finally, a challenge that the disposition was against the weight of the evidence is narrower than the challenge to the sufficiency of the evidence *Commonwealth v. Price*, 616 A.2d 681, 684 (Pa.Super.1992). A challenge to the weight of the evidence, in contrast to a challenge to the sufficiency of the evidence, "concedes that there is sufficient evidence to sustain the verdict." *Commonwealth v. Smith*, 853 A.2d 1020, 1027 (Pa. Super. Ct. 2004), *citing Commonwealth v. Bennett*, 827 A.2d 469 (Pa. Super. Ct. 2003).

These issues are resolved quite succinctly. The totality of the evidence presented at the SORNA hearing consisted of the testimony of the relative parties' experts. These experts had differing professional opinions on whether or not Defendant warranted SVP status; perhaps unsurprisingly, the Commonwealth's expert testified in her opinion that Defendant did meet the criteria for an SVP under § 9799.24, while Defendant's expert disagreed. Essentially, the challenge in each of these points boils down to the credibility of Ms. Manno, and how it compares to the credibility of Mr. Reilly. Ms. Manno's testimony was thoroughly credible, and thus supported clear and convincing evidence which was more than sufficient to establish finding Defendant to be an SVP. Since Ms. Manno's testimony was more credible to this Court than that of Mr. Reilly,

11

the Court fails to see how SVP designation was against the weight of the evidence. Accordingly, the Court would humbly request the Superior Court dismiss these errors as being meritless.

**Relative Weight of the Expert Witnesses' Testimony**

The fourth matter raised on appeal argues that Defendant's witness ought to have been given more weight, because he had the chance to interview Defendant,[5] and Mr. Reilly opined that though Defendant met the diagnostic criteria minimally, he did not find Defendant suffered from a mental abnormality and was very low risk to reoffend. The Court therefore is tasked with assessing relative credibility of the experts, sitting as the fact-finder in this hearing.

The Court has already addressed that it finds Ms. Manno's testimony to be more credible than the testimony of Mr. Reilly, and therefore, that determination of Defendant to be a sexually violent predator is warranted. The Court would humbly submit this challenge to be without merit.

**Court Error in Stating Mr. Reilly's Testimony Made Out that Defendant was an SVP**

Next, Defendant argues the Court erred in finding Defendant's testimony made out that Defendant was an SVP under § 9799.12. To the extent that the Court has stated that Defendant's expert found Defendant to be an SVP, such a characterization would not be entirely accurate. Instead, the Court finds that Defendant's testimony reflects that in his expert opinion, Defendant minimally met the diagnostic criteria for paraphilia. This would be in agreement with Ms. Manno's assessment that Defendant met the paraphilia criteria.

The respective experts disagree as to whether Defendant is at risk for reoffending. Predictably, the Commonwealth's expert found a risk for reoffending, while Defendant's expert

---

[5] The Court would note at this point it is not prepared to summarily afford defense witnesses more credibility in SVP determinations simply by virtue of interviewing the defendant, since Defendant reserves the right to not interview with the SOAB member conducting the review. Defendants may not game the system by ensuring their witnesses will control by rationing their interviews. Further, Ms. Manno testified that she does not need to meet with q defendant in order to make an SVP recommendation, and in fact does so regularly.

thought there was only a very low risk. Again, this would be a credibility issue, with the Court finding the Commonwealth's expert more credible.

**Court's Finding that Defendant Met Diagnostic Criteria for and Suffered from Paraphilia**

Defendant contends the Court erred in stating the Defendant met the diagnostic criteria for paraphilia, though Defendant's expert felt Defendant did not suffer from paraphilia. This again boils down to a credibility issue, as Ms. Manno did opine that Defendant did suffer from paraphilia. Therefore, in the disagreement between the experts, the Court was left to assess the relative credibility, and has been stated several times in this opinion, the Court found Ms. Manno to be more credible.

**Court Error in Finding and Weighing Risk of Reoffending in Determination of SVP Status**

Defendant contends next that the Court erred in finding that any risk of reoffending was sufficient to meet the definition of an SVP under § 9799.12. The Court finds this guidance from the Superior Court:

> To the extent that Appellant argues that the trial court erred as a matter of law by discrediting Dr. Foley's testimony, we find that argument likewise to be without merit. The trial court found Dr. Foley's report to be lacking and his focus on the risk of recidivism to be misplaced. This was legally correct as "the risk of re-offending is but one factor to be considered when making an assessment; it is not an independent element." *Commonwealth v. Stephens,* 74 A.3d 1034, 1039 (Pa. Super. Ct. 2013) (citation omitted).

*Commonwealth v. Hollingshead,* 111 A.3d 186, 194 (Pa. Super. Ct. 2015), *appeal denied,* 125 A.3d 1199 (Pa. 2015) (citations reformatted). The Superior Court has also stated

> The precise manner of meeting this burden [opining on the likelihood of reoffense] in not analyzed in terms of a strict, three-prong test. Nonetheless, the Commonwealth must prove by clear and convincing evidence that the statutory definition has been satisfied, and the definition certainly includes an inquiry into the likelihood of reoffense."

*Dixon,* 907 A.2d at 539.

13

Similarly, Defendant's reliance on Defendant's expert's testimony regarding the risk of recidivism is but one point, and even if the risk of recidivism was very low, it is but one factor. The testimony of Ms. Manno that Defendant was at risk for reoffending further complicates Defendant's claim. The Court finds that Ms. Manno did conduct an inquiry as to Defendant's risk of recidivism, as required by the statute. As this Court has consistently stated it finds Ms. Manno to be more credible in this case than Defendant's expert, the Court also would respectfully submit this contention on appeal is also without merit.

**Misapplication of Law Leading to an Improper Finding of SVP Designation**

Defendant's final point in the Concise Statement is merely a conclusion that because of the aforementioned errors, this Court erred in determining Defendant to be an SVP. For the reasons stated above, this Court disagrees.

*Conclusion*

The majority of the issues raised on appeal stem from the Court's determination of the relative credibility of the expert witnesses. To reiterate a final time, the Court found the testimony of Ms. Manno to be more credible than that of Mr. Reilly. Accordingly, the Court finds no error in the determination that Defendant is an SVP, and would respectfully submit that Defendant's appeal is without merit.

BY THE COURT,

*Robert L Boyer*

_____

ROBERT L. BOYER, J.

cc:     DA
        Neil Rothschild, Esq.

14