J-S34020-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JERRY ALLEN REED | |
| Appellant | No. 2023 MDA 2014 |

Appeal from the Judgment of Sentence September 5, 2014
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0000323-2014
CP-36-CR-0005013-2012

BEFORE:  BOWES, J., OTT, J., and STABILE, J.

MEMORANDUM BY OTT, J.:                    **FILED SEPTEMBER 09, 2015**

Jerry Allen Reed appeals the judgment of sentence entered September 5, 2014, in the Lancaster County Court of Common Pleas, made final by the denial of post-sentence motions on October 1, 2014.  Reed was charged with multiple offenses in two separate informations for the sexual assault of his minor daughter, A.G., which are as follows:  (1) the charges at Docket No. 323-2014, arose from sexual acts that occurred in 2007, when A.G. was 14 years old; and (2) the charges at Docket No. 5013-2012, arose from sexual acts that occurred in 2010, when A.G. was 17 years old.  After a jury found Reed guilty of all charges, the trial court imposed an aggregate sentence of 21 to 50 years' imprisonment.  On appeal, Reed challenges the trial court's ruling permitting the Commonwealth to introduce evidence of prior bad acts,

and the court's denial of his motion to sever the cases for trial. Based on the following, we affirm.

The facts underlying this appeal are as follows. Reed is the uncle of K.G., the mother of A.G., who is the victim in the present case. K.G. claims that Reed raped her twice, the first time in 1980, when she was 16 years old, and the second time in 1992, when she was 28 years old. The first incident occurred at her parents' home in Reading, Pennsylvania, when she was home alone. K.G. contends Reed entered the house without her knowledge or consent, and "engaged in sexual intercourse with [her] against her will." Trial Court Opinion, 10/31/2014, at 15. Although she told her mother about the incident, no criminal investigation was conducted. The second incident occurred at Reed's home in Lancaster, Pennsylvania. K.G. claims she met with Reed to discuss her father (Reed's brother), but he "grabbed hold of her and forcibly engaged in sexual intercourse with her." *Id.* at 15. Again, K.G. did not report the incident to police. However, as a result of the second rape, she became pregnant with A.G. A.G. is, therefore, both Reed's daughter and great-niece.[1]

The charges herein arose from Reed's sexual abuse of A.G. in July of 2007 and November of 2010. The charges at Docket No. 323-2014, resulted from the following incident:

---

[1] Reed does not dispute he is the father of A.G. N.T., 4/29/2014, at 345.

[O]n July 1, 2007, at 10:30 p.m., [Reed] told A.G., then 14 years old, to go to his garage located to the rear of the home, and she complied.[4]  Once inside the garage, [Reed] exposed his penis, told her to grasp it and she did.  [Reed] then told A.G. to perform oral sex on him but she refused.  A.G.'s two brothers and a friend observed what was going on in the garage through a peephole and banged on the door until [Reed] allowed A.G. to exit the garage.  A.G. allegedly did not know [Reed] was her father at that time, although [Reed] knew A.G. was his daughter.  No criminal charges were filed against [Reed] at that time.

_____

[4]  The evidence suggests that the victim, A.G., had some mental deficiencies.  [The parties stipulated at trial that A.G. "has an IQ of 69 and functions at a range of mild mental retardation."  N.T., 4/28/2014, at 73.].

Trial Court Opinion, 10/31/2014, at 2 (record citations omitted).  Although A.G., accompanied by her mother, K.G., reported the incident to police, the investigation was initially closed after A.G. repeatedly failed to appear for a forensic interview.  *Id.* at 11.

The charges at Docket No. 5013-2012, resulted from an assault that occurred in November of 2010.  The trial court summarized the circumstances regarding this incident as follows:

In November 2010, K.G. and her family were living in a motel in Lancaster.  A.G. had gone to Florida to visit her sister.  At the time, she had her 18-month-old daughter with her.  When she returned from Florida in November of 2010, [Reed] picked her and her daughter up at the Philadelphia Airport and took them back to his apartment [in] Lancaster City.  [A.G.] and her daughter spent the next two weeks at [Reed's] home during which time he forcibly engaged in sexual intercourse with A.G. six or seven times, at least once while her young child was in the room.  [Reed] held A.G. down, and she could not move or get up, although she screamed.  Fear kept [A.G.] from telling anyone about what was going on.  A.G. eventually called her

mother who took A.G. and her child to live with her [when she moved from the hotel into a house].

A.G. discovered she was pregnant in December 2010. After contacting the police, A.G. underwent a forensic examination at Lancaster County Children's Alliance on December 14, 2010, where she revealed the sexual abuse perpetrated upon her by [Reed] between November 15, 2010, and November 29, 2010. However, A.G. was initially reluctant to press charges against [Reed]. With the birth of her second child, C.G., on August 2, 2011, and a confirmed paternity test showing [Reed], her father/great-uncle as the father of that child,[13] A.G. decided she "had to get something done about it."

_____

[13] Forensic scientist and paternal DNA analyst Season Elizabeth Seferyn testified that she tested the buccal swab samples from [Reed], the victim, A.G., the victim's mother K.G., and the victim's daughter, C.G. Ms. Seferyn concluded that [Reed] is the biological father of A.G. and C.G. … The relative probability of paternity for each is 99.9999%.

*Id.* at 11-12 (record citations and some footnotes omitted).

On August 21, 2012, Reed was charged, at Docket No. 5013-2012, with rape, incest, sexual assault, unlawful contact with minor, and corruption of minors[2] for the incident that occurred in November of 2010. Thereafter, on December 18, 2013, Reed was charged, at Docket No. 323-2014, with attempted involuntary deviate sexual intercourse, unlawful contact with a minor, indecent assault, corruption of minors and indecent exposure[3] for the

_____

[2] 18 Pa.C.S. §§ 3121(a)(1), 4302, 3124.1, 6318, and 6301, respectively.

[3] 18 Pa.C.S. §§ 901 and 3123, 6318, 3126(a)(8), 6301, and 3127, respectively.

incident that occurred in July of 2007. On February 12, 2014, the Commonwealth filed notice of its intent to consolidate the cases for trial.

Relevant to this appeal, in October 2013 and January 2014, the Commonwealth filed three separate notices of its intent to introduce evidence of Reed's prior bad acts. Specifically, the Commonwealth intended to present evidence of (1) Reed's alleged sexual assault of K.G. in 1980 and 1992, (2) Reed's alleged sexual assault of another niece, D.B., when she was eight to 14 years old,[4] and (3) Reed's alleged sexual assault of the victim, A.G., when she was five years old.[5] *See* Commonwealth's Memorandum of Law in Support of its Rule 404(b) Motions, 4/7/2014, at 2-4. In response, on February 20, 2014, Reed filed a motion in *limine* seeking to exclude this evidence. Additionally, Reed filed another pre-trial motion that same day seeking both suppression of statements he made to police, and severance of the cases for trial. Following a March 28, 2014, hearing on all of the pre-trial motions, the court denied Reed's request to suppress evidence and sever the cases for trial. However, the trial court directed the

_____

[4] The assault of D.B. led to criminal charges against Reed. However, after a trial resulted in a hung jury, Reed was not re-tried. *See* Commonwealth's Notice of Intent to Introduce Evidence of Prior Bad Acts, 1/14/2014, at ¶ 4.

[5] The Commonwealth averred that when A.G. was five years old, she reported to her grandmother that Reed had "touched her 'coochie' (vaginal area)." Trial Court Opinion, 10/31/2014, at 17. Although the incident was reported to the Children and Youth Agency, no criminal charges were filed. *Id.*

parties to submit briefs on the issue of the admissibility of prior bad acts evidence. Thereafter, on April 17, 2014, the court entered an order denying in part and granting in part Reed's motion in *limine*. Specifically, the court ruled that evidence of Reed's prior sexual assault of K.G. and A.G. would be admissible in the Commonwealth's case-in-chief. However, with regard to Reed's prior assault of D.B., the court ruled that the evidence would not be admissible in the case-in-chief, but reserved judgment on whether the evidence might be admissible in rebuttal. ***See*** Order, 4/17/2014.

The cases proceeded to a jury trial in April of 2014. On April 29, 2014, the jury returned a verdict of guilty on all charges. The trial court, thereafter, directed that Reed undergo an assessment by the Sexual Offenders Assessment Board ("SOAB") to determine whether he met the criteria for classification as a sexually violent predator ("SVP") under the Sexual Offenders Registration and Notification Act ("SORNA"), 42 Pa.C.S. §§ 9799.10-9799.14.

On September 5, 2014, the trial court held a combined SVP/sentencing hearing. After considering testimony by the SOAB evaluator, the court first determined that Reed met the criteria for classification as a sexually violent predator. Next, the court proceeded to sentence Reed to an aggregate term of 21 to 50 years' imprisonment.[6] Reed filed a timely post-sentence motion,

---

[6] At Docket No. 5013-2012, the court imposed a sentence of eight and one-half to 20 years' imprisonment for the charge of rape and a consecutive term
*(Footnote Continued Next Page)*

in which he challenged both the weight and sufficiency of the evidence, as well as the court's denial of his pre-trial motions, and requested modification of his sentence. By order entered October 31, 2014, the court denied Reed's post-sentence motion, and this timely appeal followed.[7]

Reed's first issue on appeal challenges the trial court's denial of his motion in *limine* to preclude evidence of his purported prior assault of K.G.[8]

_____
*(Footnote Continued)*

of five to 10 years' imprisonment for the charge of incest. Additionally, the court imposed concurrent sentences of eight and one-half to 20 years for unlawful contact with minors and one and one-half to five years for corruption of minors. The sexual assault charge merged for sentencing purposes.

At Docket No. 323-2014, the court imposed concurrent sentences of seven and one-half to 20 years' imprisonment for attempted IDSI, seven and one-half to 20 years' imprisonment for unlawful contact with minors, one to two years for indecent assault, one and one-half to five years for corruption of minors, and one to five years for indecent exposure. The court further directed that the charges at each docket run consecutive to one another.

[7] On November 24, 2014, the trial court ordered Reed to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Reed complied with the court's directive and filed a concise statement on December 15, 2014. Thereafter, the court entered a Rule 1925(a) opinion relying on its October 31, 2014, opinion that denied Reed's post-sentence motions.

[8] Although Reed also challenges the court's ruling permitting evidence regarding the alleged sexual assault on A.G. when she was five years old, as the Commonwealth notes in its brief, no evidence or testimony regarding that incident was presented at trial. Accordingly, Reed cannot demonstrate that he was harmed by the court's pretrial ruling, and we need not address this claim on appeal.

Our review of an evidentiary claim is well-established:

> Admission of evidence rests within the discretion of the trial court, and we will not reverse absent an abuse of discretion. "Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will."

*Commonwealth v. Kinard*, 95 A.3d 279, 284 (Pa. Super. 2014) (*en banc*) (internal citations omitted).

Pennsylvania Rule of Evidence 404(b) prohibits evidence of a defendant's prior bad acts "to prove a person's character" or demonstrate "that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). Nevertheless, the Rule further provides that prior bad acts evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case, this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2).

Where, as here, the prior bad acts evidence is proffered under the common plan or scheme exception, we must bear in mind the following:

> When ruling upon the admissibility of evidence under the common plan exception, the trial court must first examine the details and surrounding circumstances of each criminal incident to assure that the evidence reveals criminal conduct which is distinctive and so nearly identical as to become the signature of the same perpetrator. Relevant

- 8 -

to such a finding will be the habits or patterns of action or conduct undertaken by the perpetrator to commit crime, as well as the time, place, and types of victims typically chosen by the perpetrator. Given this initial determination, the court is bound to engage in a careful balancing test to assure that the common plan evidence is not too remote in time to be probative. If the evidence reveals that the details of each criminal incident are nearly identical, the fact that the incidents are separated by a lapse of time will not likely prevent the offer of the evidence unless the time lapse is excessive. Finally, the trial court must assure that the probative value of the evidence is not outweighed by its potential prejudicial impact upon the trier of fact. To do so, the court must balance the potential prejudicial impact of the evidence with such factors as the degree of similarity established between the incidents of criminal conduct, the Commonwealth's need to present evidence under the common plan exception, and the ability of the trial court to caution the jury concerning the proper use of such evidence by them in their deliberations.

*Commonwealth v. G.D.M., Sr.*, 926 A.2d 984, 987 (Pa. Super. 2007), *appeal denied*, 596 Pa. 715, 944 A.2d 756 (2008) (quoting *Commonwealth v. Smith*, 431 Pa.Super. 91, 635 A.2d 1086, 1089 (Pa. Super. 1993)).

Although "remoteness in time is a factor to be considered in determining the probative value of other crimes evidence under the theory of common scheme, plan or design, the importance of the time period is inversely proportional to the similarity of the crimes in question." *Commonwealth v. Aikens*, 990 A.2d 1181, 1185 (Pa. Super. 2010), *appeal denied,* 607 Pa. 694, 4 A.3d 157 (2010) (holding evidence of defendant's prior sexual assault was admissible under common scheme exception despite nearly ten-year gap between periods of abuse, where victims were of similar age and both were daughters of defendant; defendant initiated contact with each victim during overnight visit in his apartment; defendant began sexual abuse by showing victims pornographic movies; and assaults occurred in bed at night). *See also Commonwealth v. Luktisch*, 451 Pa.Super. 500, 680 A.2d 877 (Pa. Super. 1996) (holding common scheme exception justified admission of testimony regarding defendant's previous sexual assaults despite six-year lapse between periods of abuse, where three victims were nearly same age, victims

were either daughter or step-daughter of defendant and lived with him when acts occurred; and pattern of molestation—from improper touching to oral sex to sexual intercourse—was highly similar with respect to two victims).

*Com. v. Tyson*, ___ A.3d ___, ___, 2015 PA Super 138, *3-4 (Pa. Super. 2015).

Here, Reed contends the trial court erred when it determined the evidence was admissible pursuant to the common plan, scheme or design exception. Specifically, he asserts the prior bad acts do not share a "unique similarity" in facts with the present charges, and, indeed, "[t]he only constant was the nature of the familial relationship [Reed] shared with A.G. and K.G." Reed's Brief at 12. Moreover, Reed states the "locations, dates, and circumstances of the acts as to K.G. and A.G. were markedly different." *Id.* at 13. For example, K.G. testified Reed first assaulted her at her parents' home when she was 16 years old, and, later, at his home when she was 28 years old. Conversely, the first alleged sexual assault of A.G., an attempted involuntary deviate sexual intercourse, occurred in Reed's garage, when A.G. was 14 years old. Moreover, the second incident, a purported rape, occurred at Reed's home when A.G., then 17 years old, was staying with him. Accordingly, Reed contends the acts were not sufficiently similar to demonstrate a common plan, scheme or design. Additionally, Reed argues any probative value assigned to the testimony regarding his prior bad acts was far outweighed by the danger of unfair prejudice. *Id.* at 16. Specifically, he contends the remoteness in time of the prior incidents is "substantial." *Id.* at 17.

- 10 -

The trial court concluded, however, that evidence of Reed's prior sexual assault of K.G., the victim's mother, was admissible to demonstrate a common plan, scheme or design. In particular, the court emphasized the following:

> [T]here were strong similarities between [Reed's] conduct on A.G. and his prior conduct on A.G.'s mother, K.G. K.G., like A.G,. was a minor female at the time of the first assault. K.G., like A.G., was a niece of [Reed's]. [Reed] used the family relationship and opportunity to be alone with K.G. to force her to engage in incestuous sexual intercourse with him, just as he used the same factors to isolate and assault A.G. Both K.G. and A.G. indicate[d] they were held down by [Reed] during the assaults. K.G., like A.G., got pregnant as a result of the assaults.

Trial Court Opinion, 10/31/2014, at 20.

We find this Court's decision in **Commonwealth v. Aikens**, 990 A.2d 1181 (Pa. Super. 2010), *appeal denied*, 4 A.3d 157 (Pa. 2010), instructive. In that case, the appellant was convicted of, *inter alia*, indecent assault for the sexual abuse of his 14-year-old daughter, T.S. **Id.** at 1182. At trial, the Commonwealth presented the testimony of V.B., the appellant's then 32-year old daughter by another woman, who claimed appellant had sexually abused her when she was 15 years old. On appeal, the appellant challenged the court's admission of this evidence under the common plan, scheme or design exception. In concluding the ruling was not an abuse of discretion, a panel of this Court stated:

> In both cases, the victims were of like ages: T.S. was fourteen years old, and V.B. was fifteen years old. Both victims were Appellant's biological daughters. Appellant initiated the contact

during an overnight visit in his apartment. He began the sexual abuse by showing the girls pornographic movies. The assaults occurred in bed at night. While Appellant raped V.B. and indecently assaulted T.S., T.S. stopped Appellant from disrobing her and committing the more serious sexual assault. In addition, Appellant mimicked the grinding movements of sexual intercourse on T.S. in order to sexually gratify himself. These matching characteristics elevate the incidents into a unique pattern that distinguishes them from a typical or routine child-abuse factual pattern. Hence, we reject Appellant's position that we are pigeonholing sexual abuse cases to such an extent that any prior instance of child abuse would be admissible in a subsequent child abuse prosecution. *See also Commonwealth v. Hughes*, 521 Pa. 423, 555 A.2d 1264 (1989) (evidence about prior rape correctly allowed at rape-murder trial since crimes were committed in similar geographic location, at similar time, characteristics of victim matched, and defendant used same method of attack). As was the case in *Hughes*, the similarities at issue herein were "not confined to insignificant details that would likely be common elements regardless of who committed the crimes." *Id.* at 1283.

Concededly, the time lapse at issue in this case was lengthy. V.B.'s abuse started in fall 1986 and ended in approximately 1990. N.T. Motion, 7/29/02, at 4. The rape introduced at this trial occurred fifteen years prior to the assault at issue. *Id.* at 3. Thus, there was a ten-to-eleven-year period between the end of that abuse and the present abuse. However, as we noted [*supra*,] remoteness is merely one factor to be considered in determining admissibility; the importance of the gap in time is inversely proportional to the similarity between the crimes. In this case, the parallels are striking. The abuse was perpetrated in an identical manner on victims with identical characteristics and in an identical setting. The only exception was that the victim herein was able to stop the abuse from escalating. Hence, the fact that V.B.'s abuse occurred remotely to that in the present case was not determinative of the issue. In addition, since the crimes were comparable, the probative value of the evidence of V.B.'s abuse outweighed its prejudicial impact.

*Id.* at 1185-1186.

We find the same true here. While the particular circumstances surrounding the prior incidences were not identical, with respect to both K.G. and A.G., Reed preyed upon his teenaged nieces, who were both about the same age at the time he first vaginally raped them by holding them down.[9] *See* N.T., 4/28/2014, at 82, 152. Moreover, both rapes involved physical force, as opposed to only intimidation. *See id.* at 87, 155. Although K.G. was 28 years old the second time Reed raped her, he was able to get her alone only after taking advantage of their familial relationship. Indeed, K.G. testified she only agreed to meet with Reed at his house, upon his suggestion, to discuss her strained relationship with her own father. *Id.* at 153. Further, as a result of that assault, K.G. became pregnant with the victim herein, A.G. Accordingly, we find no abuse of discretion on the part of the trial court in admitting evidence of Reed's sexual assault of the victim's mother under the common plan, scheme and design exception.

Nonetheless, prior bad acts evidence is admissible in a criminal case "only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2). With respect to this balancing test, the trial court opined:

_____

[9] We note, too, that both K.G. and A.G. were teenaged mothers at the time they were raped. The first time Reed forced K.G. to have sex, she was alone at her parents' home with her infant son. *See* N.T., 4/28/2014, at 152. Similarly, the first time, Reed forced A.G. to have sex with him, she was staying at his house with her one-year-old daughter. *Id.* at 84-87.

In the instant case, I found that the probative value of the evidence outweighed its prejudicial effect. Although evidence of the prior sexual assaults on the victim, A.G., and her mother, K.G., may have been prejudicial, it was not unduly so. As the comment to Rule 403 instructs, "'[u]nfair prejudice' means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Pa.R.E. 403 cmt. The sexual assault evidence, introduced for legitimate purposes, was not so prejudicial that it likely diverted the jury's attention away from its duty of weighing the evidence impartially.

Moreover, "[w]hether relevant evidence is unduly prejudicial is a function in part of the degree to which it is necessary to prove the case of the opposing party." *Commonwealth v. Gordon*, 543 Pa. 513, 521, 673 A.2d 866, 870 (1996). Here, the Commonwealth was required to prove the elements of rape, indecent assault, IDSI, sexual assault, unlawful contact and indecent exposure, which include forcible compulsion and non-consensual touching. [Reed] denied that the contact occurred, and since the uncorroborated testimony of the victim in this case might have reasonably led a jury to determine that there was a reasonable doubt as to whether [Reed] committed the crimes charged, it was fair to conclude that the other crimes evidence was necessary for the prosecution of the case. Without doubt, the other crimes evidence was prejudicial to [Reed]. That is what it is designed to be. On the facts of this case, however, it was not unduly prejudicial, as it was required for the Commonwealth's case.

Trial Court Opinion, 10/31/2014, at 24-25.

We agree. While Reed emphasizes the "remoteness of time" between the sexual assault against A.G., and his prior assault of her mother, we find that the probative value of the prior bad acts evidence outweighed any potential prejudice. Indeed, the remoteness of time between the acts was solely the result of Reed's decision to sexually abuse and impregnate one niece, and subsequently, sexually abuse and impregnate the daughter born as a result of the first assault. Although the evidence demonstrated the

baby born to A.G. in 2011 was Reed's biological child, the only evidence that the pregnancy was the result of a rape was A.G.'s own testimony. Accordingly, the testimony of her mother, that A.G., too, was the product of a rape by the same defendant, was of significant probative value. Therefore, Reed's challenge to the trial court's admission of testimony regarding his prior bad acts fails.

In his second issue, Reed argues the trial court erred in denying his motion to sever the cases for trial. Our review of such a claim is well-settled:

> In reviewing a trial court decision to consolidate or to sever offenses for trial, our standard is abuse of discretion. Offenses charged in separate informations may be tried together if they are "based on the same act or transaction" or if "the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion." Pa.R.Crim.Pro. 582(A)(1). The court has discretion to order separate trials if "it appears that any party may be prejudiced" by consolidating the charges. Pa.R.Crim.Pro. 583.
>
> Our Supreme Court has established a three part test, incorporating these two rules, for deciding the issue of joinder versus severance of offenses from different informations. The court must determine
>
>> whether the evidence of each of the offenses would be admissible in a separate trial for the other; whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, whether the defendant will be unduly prejudiced by the consolidation of offenses.

*Commonwealth v. Thomas*, 879 A.2d 246, 260 (Pa. Super. 2005) (some internal citations omitted), *appeal denied*, 989 A.2d 917 (Pa. 2010).

Here, Reed argues the court improperly denied his motion to sever the cases for trial because the "two dockets do not involve a common scheme/plan/design and the evidence of each would not have been admissible in a separate trial for the other." Reed's Brief at 21. He asserts the two alleged assaults on A.G., four years apart, "occurred at different time and in different locations." *Id.* at 19. He further contends that because the only similarity in the crimes was the victim, the evidence of each incident would not have been admissible in a trial for the other.

The trial court, however, concluded the cases should be consolidated for trial based upon the above-stated three-part test. First, the court found "the evidence from the two Informations showed a common scheme, plan or design, as well as [Reed's] identity," and, therefore, would be admissible in a separate trial for the other. Trial Court Opinion, 10/31/2014, 27. Next, the court determined "the evidence was capable of separation by the jury" because "[t]he offenses occurred at different times and in different places." *Id.* Lastly, the trial court found Reed would not be "unduly prejudiced by the consolidation of the offenses" because the prejudice to him would not be any greater than the general prejudice he would suffer by being linked to a crime. *Id.* at 27-28.

Again, we find no error or abuse of discretion on the part of the trial court. First, we agree that the evidence of each crime would be admissible in a trial for the other. The 2007 incident, in which Reed exposed himself to then 14-year-old A.G. and attempted to engage her in oral sex, would

clearly be admissible in a trial for the 2010 rape to demonstrate that Reed's "sexual misconduct was of a continuing and escalating nature." ***Commonwealth v. Dunkle***, 602 A.2d 830, 839 (Pa. 1992) ("McCormick on Evidence states that prior sexual misconduct with the victim is admissible '[t]o show a passion or propensity for illicit sexual relations with the particular person concerned in the crime on trial.'") (citation omitted). Indeed, the jury could infer the 2007 incident did not result in a rape simply because Reed was interrupted by A.G.'s brother. Moreover, evidence of the later incident would be admissible in a trial for the former to demonstrate that when A.G. became impregnated with Reed's child, it was not the result of a consensual act.

Moreover, we agree the crimes are easily separable because they occurred three years apart in different locations, and involved different sexual acts. Lastly, we agree Reed has failed to demonstrate he was prejudiced by the consolidation of the cases for trial. Indeed, with regard to the 2007 incident, there were several eyewitnesses to the crime. Further, with regard to the 2010 incident, the Commonwealth presented evidence that Reed was the biological father of the child born to his 17-year old daughter/great-niece nine months later. As our Supreme Court explained in ***Commonwealth v. Lark***, 543 A.2d 491 (Pa. 1988):

> The "prejudice" of which Rule [583] speaks is not simply prejudice in the sense that appellant will be linked to the crimes for which he is being prosecuted, for that sort of prejudice is ostensibly the purpose of all Commonwealth evidence. The prejudice of which Rule [583] speaks is, rather, that which would

occur if the evidence tended to convict appellant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence. Such prejudice was not present in the instant case.

*Id.* at 499. Accordingly, we find no abuse of discretion on the part of the trial court in denying Reed's motion to sever the cases for trial.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/9/2015