J-S49037-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| TERRELL WAYNE SPINKS | |
| Appellant | No. 1945 WDA 2016 |

Appeal from the Judgment of Sentence Entered July 19, 2016
In the Court of Common Pleas of Crawford County
Criminal Division at No(s):  CP-20-CR-0000716-2014,
CP-20-CR-0001128-2014

BEFORE: DUBOW, SOLANO, and FITZGERALD,* JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED SEPTEMBER 14, 2017**

Appellant, Terrell Wayne Spinks, appeals from his judgment of sentence of forty-three to eighty-six years' imprisonment for multiple sexual offenses against six minor victims between 2011 and 2014.  Appellant argues that the trial court abused its discretion by consolidating charges from two separate informations for trial.  We affirm.

Appellant was charged with sexually abusing six minor victims, three of whom were his stepdaughters (B.M.H., B.E.H. and M.M.H.) and three of whom were friends of his stepdaughters (A.K., Z.B. and O.B.).

In an information filed on August 21, 2014 at CR 716-2014, the Commonwealth charged Appellant with eight counts of indecent assault,[1]

---

* Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 3126.

five counts of unlawful contact with a minor,[2] five counts of corruption of minors,[3] five counts of endangering welfare of children,[4] two counts of terroristic threats,[5] two counts of involuntary deviate sexual intercourse with a child ("IDSI"),[6] one count of criminal solicitation,[7] one count of aggravated indecent assault of a child,[8] and one count of aggravated indecent assault,[9] arising out of incidents that took place between 2012 and 2014. The information alleged crimes against all six victims.[10]

In a second information filed on January 8, 2015 at CR 1128-2014, the Commonwealth charged Appellant with one count of rape of a child,[11] four

---

[2] 18 Pa.C.S. § 6318.

[3] 18 Pa.C.S. § 6301.

[4] 18 Pa.C.S. § 4304.

[5] 18 Pa.C.S. § 2706.

[6] 18 Pa.C.S. § 3123(b).

[7] 18 Pa.C.S. § 902.

[8] 18 Pa.C.S. § 3125(b).

[9] 18 Pa.C.S. § 3125.

[10] M.M.H. had not come forward with her report of abuse at the time of the first information. Nevertheless, the first information charged Appellant with crimes against M.M.H. based on the reports of other victims.

[11] 18 Pa.C.S. § 3121(c).

counts of IDSI,[12] two counts of criminal solicitation,[13] one count of unlawful contact with minor,[14] one count of endangering welfare of children,[15] one count of corruption of minors, four counts of indecent assault,[16] and one count of indecent exposure[17] arising out of incidents that took place between 2011 and 2014. The charges in this information only involved M.M.H., who initially was unwilling to report Appellant's conduct but came forward with her own report of additional crimes after Appellant was incarcerated on the first information.

Appellant filed a pretrial motion to sever the charges into six trials, one for each complainant, and to limit the evidence in each trial to that complainant. The Commonwealth responded that the trial court should consolidate all charges in both informations into one trial.

During a hearing on Appellant's motion to sever, the Commonwealth asserted that it would present the following evidence.

Nine year old B.M.H., the youngest of the three stepdaughters, would testify that on one occasion, she observed Appellant on top of B.E.H. in the

---

[12] 18 Pa.C.S. § 3123(b).

[13] 18 Pa.C.S. § 902.

[14] 18 Pa.C.S. § 6318.

[15] 18 Pa.C.S. § 4304.

[16] 18 Pa.C.S. § 3126.

[17] 18 Pa.C.S. § 3127.

bedroom of their residence, "humping [her]." N.T., Hr'g On Mot. To Sever, 6/10/15, at 9. B.M.H. would also testify that (1) she observed sexual activity between Appellant and the other victims; and (2) Appellant touched B.M.H.'s vagina with his hands, put his penis into her buttocks and mouth, and put his mouth on her private parts. *Id.* at 9-10.

Thirteen year old M.M.H., the oldest stepdaughter, would testify that Appellant put his penis in her anus and genitals, put his hands on her genitals, put his mouth on her genitals, and put his penis in her mouth. *Id.* at 10. M.M.H. would also testify that Appellant made the stepdaughters watch pornographic movies and watch him and his wife have sex so that they would learn about sex. *Id.*

Eleven year old B.E.H., the middle stepdaughter, and the girl who suffered the most abuse, would testify that Appellant put his penis in her buttocks, put his penis in her genitals, and put his mouth and hands on her genitals. *Id.* at 10-11.

All three stepdaughters would testify that they saw Appellant ejaculate. *Id.* at 11.

Ten year old A.K., a friend of the stepdaughters, would testify that she was at Appellant's residence on three occasions, including one weekend when she slept over. *Id.* During this visit, Appellant touched her in the shower on her genital and breast areas. He also exposed his penis to A.K. in the bedroom and attempted to engage in sexual intercourse with her, but

the stepdaughters stopped it. *Id.* He was intoxicated on these occasions. *Id.*

Ten year old Z.B. and eleven year old O.B., two other friends of the stepdaughters, would testify that on one occasion, they were at Appellant's residence with the stepdaughters, and in the Commonwealth's words,

> he was exposing himself. He had these bikini-type underwear on and made certain statements to the effect that, let's get this party started while I still have my pants on. He was touching all of the girls in inappropriate places. While this was going on, the girls were scared. So this was [O.B., Z.B.] and the three [sisters] . . . M.M.H. call[ed A.S., the stepdaughters' mother, who was at a friend's house,] claiming that [Appellant] was touching them inappropriately, raising hell. [A.S. came] home [and] confront[ed] the girls. She [made] the girls go and tell [Appellant] what they were accusing him of, touching them inappropriately. She [made] them continue to be present with them. He continue[d] to be . . . loud. The girls [were] scared. At that point, the girls [were] afraid to say anything because [Appellant was] right there. [A.S. didn't] do anything to separate the girls from him. She [didn't] phone any parents and they continue[d] to stay the night.

*Id.* at 12-13.

Appellant told the three stepdaughters not to report his conduct and threatened to kill them if they did. *Id.* at 14. Finally, B.E.H. told her natural father about Appellant's conduct. *Id.* B.M.H. and M.M.H. were present, but M.M.H. was too frightened to talk about it. *Id.* The father notified CYS, and the police interviewed all six victims. *Id.* M.M.H. was still too afraid to report any incident, but on a later date, she reported Appellant's conduct to

her father. *Id.* at 14-15. The police then interviewed her, and the Commonwealth filed a second information against Appellant. *Id.* at 15.

The Commonwealth contended that the victims' cases should be joined for trial because the evidence showed Appellant's motive and a common scheme, namely a pattern of anal, genital and oral intercourse with the three stepdaughters, as well as improper touching with his hands. *Id.* The Commonwealth further argued that the cases should be joined because Appellant claimed that he simply tickled O.B. while intoxicated, but the testimony of all six victims would demonstrate absence of mistake. *Id.* Lastly, the Commonwealth stressed that the jury would be able to separate each victim's account from the others, because they could take notes concerning each girl's testimony, and "if [the jury had] any issues with what girls testified [as] to what body parts touched what body parts, they [could] simply ask for reclarification of the testimony." *Id.* at 16.

At the conclusion of the hearing, the trial court denied the motion to sever and consolidated the two informations for trial. *Id.* at 24-29. The court reasoned that (1) all of the incidents involved prepubescent or early adolescent girls; (2) the offenses against each victim were linked, because five victims were present during one of the encounters with Appellant; (3) the incidents were relatively close in time; (4) the evidence was admissible under Pa.R.E. 404(b) to demonstrate Appellant's motive to assault youthful girls and his absence of mistake; (5) the probative value of the evidence

- 6 -

outweighed any prejudice to Appellant; and (6) the evidence was not complicated enough to render the jury incapable of separating the offenses against each victim. *Id.*

Each of the six victims testified during the three-day trial in November 2015. Their testimony was consistent with the Commonwealth's forecast of their testimony during the hearing on Appellant's motion to sever. The jury convicted Appellant on all counts at CR 716-2014 except for two counts of indecent assault, one count of unlawful contact with a minor, one count of corruption of minors and one count of terroristic threats. The jury convicted Appellant on all counts at CR 1128-2014.

Appellant filed timely post-sentence motions, which the trial court denied, and a timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises one issue in this appeal:

> Whether the trial court erred in denying Appellant's motion to sever the two cases for trial pursuant to Pennsylvania Rule of Criminal Procedure [] 583?

Appellant's Brief at 3. On its face, this question appears to be different than the issue raised in Appellant's pretrial motion to sever. In his pretrial motion, Appellant requested six trials, one per victim; the above question appears to claim that Appellant should have received two trials, one per information. Nevertheless, read generously, the body of Appellant's brief appears to take the position that he should have received six trials, one per

victim, the same issue that Appellant raised in his pretrial motion. Therefore, we will not find that Appellant waived his lone argument on appeal.

"Whether [] separate indictments should be consolidated for trial is within the sole discretion of the trial court and such discretion will be reversed only for a manifest abuse of discretion or prejudice and clear injustice to the defendant." **Commonwealth v. Robinson**, 864 A.2d 460, 481 (Pa. 2004) (citations and quotation marks omitted). "Appellant bears the burden of establishing such prejudice." **Commonwealth v. Melendez– Rodriguez**, 856 A.2d 1278, 1282 (Pa. Super. 2004) (*en banc*) (citation omitted).

The Pennsylvania Rules of Criminal Procedure govern the joinder and severance of offenses as follows:

> **Rule 582. Joinder—Trial of Separate Indictments or Informations**
>
> **(A)  Standards**
>
> (1)  Offenses charged in separate indictments or informations may be tried together if:
>
>   (a)  the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or
>
>   (b)  the offenses charged are based on the same act or transaction.

Pa.R.Crim.P. 582(A)(1).

**Rule 583.  Severance of Offenses or Defendants**

The court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together.

Pa.R.Crim.P. 583.

Under Rule 583, the prejudice the defendant suffers due to the joinder must be greater than the prejudice he suffers when the Commonwealth's evidence links him to a crime.  ***See Commonwealth v. Lauro***, 819 A.2d 100, 107 (Pa. Super. 2003).

[T]he "prejudice" of which Rule [583] speaks is not simply prejudice in the sense that appellant will be linked to the crimes for which he is being prosecuted, for that sort of prejudice is ostensibly the purpose of ***all*** Commonwealth evidence. The prejudice of which Rule [583] speaks is, rather, that which would occur if the evidence tended to convict [the] appellant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence.

***Id.*** (citation omitted).  Moreover, "the admission of relevant evidence connecting a defendant to the crimes charged is a natural consequence of a criminal trial, and it is not grounds for severance by itself." ***Id.*** (citation and quotation marks omitted).

Reading these rules together, our Supreme Court established the following test for severance matters:

Where the defendant moves to sever offenses not based on the same act or transaction that have been

> consolidated in a single indictment or information, or opposes joinder of separate indictments or informations, the court must therefore determine: [1] whether the evidence of each of the offenses would be admissible in a separate trial for the other; [2] whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, [3] whether the defendant will be unduly prejudiced by the consolidation of offenses.

*Commonwealth v. Collins*, 703 A.2d 418, 422 (Pa. 1997) (citation omitted).

Pursuant to this test, we must first determine whether the trial court abused its discretion in holding that evidence of each of the offenses would be admissible in a separate trial for the other. In making this determination, we are mindful that "[e]vidence of crimes other than the one in question is not admissible solely to show the defendant's bad character or propensity to commit crime." *Id.* (citations omitted)*; see* Pa.R.E. 404(b)(1) ("[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character"). Nevertheless, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2). "In order for evidence of prior bad acts to be admissible as evidence of motive, the prior bad acts 'must give sufficient ground to believe that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances.'"

*Melendez–Rodriguez*, 856 A.2d at 1283 (citation and quotation marks omitted).  "Additionally, evidence of other crimes may be admitted where such evidence is part of the history of the case and forms part of the natural development of the facts."  *Lauro*, 819 A.2d at 107 (citation omitted).

For several reasons, the trial court acted within its discretion by denying Appellant's motion to sever.  First, the evidence of acts against one victim would be admissible in a separate trial for acts against another victim to prove a common scheme.  *See Commonwealth v. Aikens*, 990 A.2d 1181 (Pa. Super. 2010); *Commonwealth v. O'Brien*, 836 A.2d 966 (Pa. Super. 2003); *Commonwealth v. Luktisch*, 680 A.2d 877 (Pa. Super. 1996).

*Aikens* held that the trial court properly admitted evidence that Aikens had sexually abused his biological daughter, V.B., as proof of his common scheme, plan, or design to abuse a second biological daughter, T.S, because the "fact pattern involved in the two incidents was markedly similar." *Aikens*, 990 A.2d at 1185–86.  The victims were almost the same age at the time of the abuse; V.B was 14 and T.S. was 15.  *Id.* at 1182–83, 1186. Aikens initiated the sexual abuse while the victims were staying in his apartment; he showed pornographic movies to the victims, the assaults occurred at night in Aikens' bed, and he mimicked sexual intercourse to gratify himself.  *Id.* at 1186.   We found that "[t]hese matching

characteristics elevate the incidents into a unique pattern that distinguishes them from a typical or routine child-abuse factual pattern." *Id.*

*O'Brien* held that the trial court erred in refusing to admit prior convictions of sexual abuse under the common scheme exception. *O'Brien*, 836 A.2d at 972. Both incidents involved boys of the same age, and the defendant was a family friend of both victims. *Id.* at 968-69. The defendant assaulted the victims while alone with them in their homes, groomed them with pornography, and forced his penis into their mouths. *Id.* We held that the prior conviction was sufficiently similar to the charges to constitute a "signature" crime based on their shared similarities. *Id.* at 971-72.

Finally, in *Luktisch*, the defendant was convicted of sexually molesting his stepdaughter, D.G.. *Luktisch*, 680 A.2d at 878. We held that the defendant's acts toward two other victims, C.G. and T.L., were sufficiently similar to constitute a common scheme:

> The acts committed upon [D.G.], [C.G.], and [T.L.] were strikingly similar. The three victims were near the same age when [Luktisch] molested them; they all had the relationship of daughter or step-daughter to [Luktisch]; all three were living with [Luktisch] when the acts occurred; and the nature of the acts were almost identical. The progression of the acts performed on each victim was similar; improper touching first, then oral sex, then sexual intercourse. It is true that [D.G.] only made passing references to acts performed upon her by the [Luktisch] other than the singular act of sexual intercourse for which the [Luktisch] was charged and convicted, but [C.G.] and [T.L.] gave descriptions of how [Luktisch's] molesting them had progressed. Certainly what [D.G.] did describe

fits squarely into the overall common scheme and course of conduct as it progressed from [T.L.], to [C.G.], to [D.G.].

*Id.* at 879 (citation omitted).

Here, the three stepdaughters whom Appellant assaulted were all prepubescent when the encounters began and were close in age to one another. With each stepdaughter, Appellant engaged in anal and vaginal intercourse, put his penis in her mouth, put his mouth on her vagina, and groped her with his hands. All sexual acts with each stepdaughter took place in Appellant's residence. He made each of them watch pornographic films and watch him have sexual intercourse with their mother. Each stepdaughter saw Appellant ejaculate. Appellant told each stepdaughter not to report his conduct and threatened to kill them if they did. All events took place between 2011 and 2014, close in time to the three-day trial in November 2015. The evidence in this case is similar to the evidence that we found sufficient to prove a common scheme in *Aikens*, *O'Brien* and *Luktisch*.

In addition, consolidation of the charges was necessary to prove Appellant's intent[18] and lack of mistake. For example, according to the Commonwealth, Appellant claimed that he merely tickled O.B. while

---

[18] Although this reason is different from those given by the trial court, we may affirm for reasons other than those given by the trial court. *See Commonwealth v. Judge*, 916 A.2d 511, 517 n.11 (Pa. 2007) ("[T]his Court may affirm on any ground").

- 13 -

intoxicated, and that she misinterpreted his acts as sexual advances. The other victims' testimony about Appellant's sexual assaults was admissible to demonstrate that Appellant's actual intent was not to engage in horseplay with O.B., but to have sexual contact with her. *Cf. Commonwealth v. Sherwood*, 982 A.2d 483, 497 (Pa. 2009) (evidence of defendant's prior physical assaults of four-year-old victim was admissible to show intent in prosecution for first-degree murder; defendant claimed at trial that he did not intend to kill the victim and he loved the victim, and the prior bad acts evidence refuted defendant's assertions by demonstrating his actual intent).

Finally, consolidation was proper under the *res gestae* exception, which permits admission of evidence of other crimes or bad acts to tell "the complete story." *See Commonwealth v. Williams,* 896 A.2d 523, 539 (Pa. 2006). In this case, more than once, the victims were eyewitnesses to Appellant's acts against other victims or other important events. B.M.H. observed Appellant on top of B.E.H. engaging in sexual intercourse, and B.M.H. also observed Appellant having sexual contact with other victims. Appellant made all three stepdaughters watch pornographic movies and watch him and his wife have sex so that they would learn about sex. Five of the six victims were present one night when Appellant was touching them inappropriately while clad in bikini underwear. The three stepdaughters were together with their natural father when B.E.H. reported Appellant's conduct. Since the victims' testimony was interconnected, and since each

victim's testimony corroborated other victims' accounts, it was necessary for all victims to testify before a single jury in order to present a complete picture of Appellant's conduct.

The trial court properly concluded that consolidation of the charges would not prejudice Appellant by causing the jury to lose track of which crimes Appellant committed against which victim. The Commonwealth correctly observed that the jury could take notes of each victim's testimony and ask for testimony to be read back to them for purposes of clarification. The fact that the jury acquitted Appellant of five charges—two counts of indecent assault, one count of unlawful contact with a minor, one count of corruption of minors and one count of terroristic threats—demonstrates that the evidence did not confuse the jury. The jury carefully reviewed each charge and distinguished between charges the Commonwealth proved versus charges that the Commonwealth failed to prove.

Thus, as we reasoned in ***Commonwealth v. Ferguson***, 107 A.3d 206 (Pa. Super. 2015):

> [a]ppellant was not unduly prejudiced by the trial court's decision to allow the jury to hear evidence of the separate, yet interrelated, crimes . . . . As was said in [***Commonwealth v.***] ***Lark***, 543 A.2d [491]*,* 500 [(Pa. 1988)], "[This was a] series of crimes committed by the [appellant] which were all related. He created the sequence of events and cannot fairly now demand that the . . . matters be severed and tried in separate trials."

***Id.***, 107 A.3d at 212.

Judgment of sentence affirmed.

- 15 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/14/2017