J-S56023-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WILLIAM F. SMITH | |
| Appellant | No. 1580 EDA 2016 |

Appeal from the Judgment of Sentence Entered April 15, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0007605-2011

BEFORE: BOWES, STABILE, and PLATT,[*] JJ.

MEMORANDUM BY STABILE, J.:                    **FILED NOVEMBER 30, 2017**

Appellant, William F. Smith, appeals from the April 15, 2016 judgment

of sentence imposing 11½ to 23 months of incarceration followed by eight

years of probation for indecent assault of a child, endangering the welfare of

a child, corruption of the morals of a minor, and unlawful contact with a

minor.[1] We affirm.

The trial court recounted the following facts:

> The complainant, S.M., a minor at the time of the crime, is
> the maternal niece of [Appellant]. [Appellant] was also a pastor
> at Truth Memorial Baptist Church, where S.M. and her family were
> congregants. In 2002, when S.M. was seven years old, she would
> go to [Appellant's] house to play with his children. On one
> occasion, S.M. testified that she and [Appellant] were alone on a

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3126(a)(7), 4304, 6301, 6318, respectively.

couch in his basement. [Appellant] forced her to put her hand down his pants and touch his penis, while he put his hand down her pants and touched her vagina. On another occasion, [Appellant] and S.M. were in [Appellant's] bedroom alone. S.M. testified that [Appellant] got on top of her and started 'grinding' on her. Additionally, during this time period, S.M. testified that [Appellant] would give her small sums of money, while not giving any to his own children. All of these events happened over the course of a few months, however S.M. could not recall exactly the time frame. S.M. did not report any of these incidents to anyone at any time.

In January of 2011, S.M. was in a relationship with [D.M.]. He was also a congregant at Truth Memorial. [D.M.] testified that he had a dream that S.M. was not being truthful with him and she was hiding a secret. [D.M.] then asked S.M. about that dream, and S.M. admitted to him that [Appellant] had sexually abused her when she was young.

At trial, evidence was presented that [Appellant] had similar interactions with young girls that were congregants of his church.

Trial Court Opinion, 3/1/16, at 2-3 (record citations omitted).

On October 15, 2015, at the conclusion of a lengthy trial, a jury found Appellant guilty of the aforementioned offenses. On April 15, 2016, the trial court sentenced Appellant as set forth above. Appellant filed this timely appeal on May 13, 2016. He presents two questions for review:

I.    Is Appellant entitled to an arrest of judgment with regard to his convictions for unlawful contact with a minor, indecent assault of a child, endangering the welfare of a child and corruption of the morals of a minor since the evidence is insufficient to sustain the verdicts of guilty as the Commonwealth failed to sustain its burden of proving Appellant's guilt beyond a reasonable doubt?

II.   Is Appellant entitled to a new trial as a result of the pretrial court's pretrial ruling that granted the Commonwealth's motion to admit evidence of other crimes and/or bad acts?

Appellant's Brief at 4. We will consider these questions in turn.

- 2 -

Our standard for reviewing a challenge to the sufficiency of the evidence is well-settled:

> When evaluating a sufficiency claim, our standard is whether, viewing all the evidence and reasonable inferences in the light most favorable to the Commonwealth, the factfinder reasonably could have determined that each element of the crime was established beyond a reasonable doubt. This Court considers all the evidence admitted, without regard to any claim that some of the evidence was wrongly allowed. We do not weigh the evidence or make credibility determinations. Moreover, any doubts concerning a defendant's guilt were to be resolved by the factfinder unless the evidence was so weak and inconclusive that no probability of fact could be drawn from that evidence.

*Commonwealth v. Kane*, 10 A.3d 327, 332 (Pa. Super. 2010), *appeal denied*, 29 A.3d 796 (Pa. 2011).

We begin our analysis with Appellant's conviction for indecent assault of a child, under § 3126(a)(7) of the Crimes Code:

> **(a) Offense defined.--**A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:
>
> [...]
>
> (7) the complainant is less than thirteen years of age[.]

18 Pa. C.S.A. § 3126(a)(7). Indecent contact is "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S.A. § 3101. As set forth above, the victim testified that, while she was seven or eight years old, Appellant forced her to touch his penis while he touched her vagina. The jury found the victim

credible, and her testimony is plainly sufficient to meet the criteria of § 3126(a)(7). Further, "it is well-established that the 'uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses.'" *Commonwealth v. Castelhun*, 889 A.2d 1228, 1232 (Pa. Super. 2005).

Appellant argues that his "character and position as a church pastor are at odds with [the victim's] allegations of inappropriate conduct." Appellant's Brief at 20. Appellant also argues that defense witnesses established that he had no opportunity to commit the offenses the victim alleged, that no other witnesses supported the victim's account, and that her delay in reporting inhibited collection of physical evidence. *Id.* Notwithstanding the foregoing, Appellant insists he is not challenging the weight of the evidence (an issue he did not preserve). *Id.* He argues that the "delay in reporting and the surrounding circumstances impact the sufficiency of the evidence." *Id.*

Appellant is incorrect. His argument is nothing other than a challenge to the victim's credibility, and credibility challenges are not cognizable in a sufficiency of the evidence claim. *Commonwealth v. Palo*, 24 A.3d 1050, 1055 (Pa. Super. 2011), *appeal denied*, 34 A.3d 828 (Pa. 2011). Our Supreme Court has explained the distinction between weight and sufficiency of the evidence claims:

> [W]e find it necessary to delineate the distinctions between a claim challenging the sufficiency of the evidence and a claim that challenges the weight of the evidence. The distinction between these two challenges is critical. A claim challenging the sufficiency

of the evidence, if granted, would preclude retrial under the double jeopardy provisions of the Fifth Amendment to the United States Constitution, and Article I, Section 10 of the Pennsylvania Constitution, […] whereas a claim challenging the weight of the evidence if granted would permit a second trial.

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence[,] do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that **'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.**'

*Commonwealth v. Widmer*, 744 A.2d 745, 751–52 (Pa. 2000) (citations omitted) (emphasis added). The bolded phrase is a succinct summary of Appellant's argument. He cannot obtain relief because he has failed to preserve a challenge to the weight of the evidence.

- 5 -

Appellant offers similar arguments concerning his other convictions, and they fail for the same reason. Namely, the victim's credibility is not reviewable in a challenge to the sufficiency of the evidence. We will address each conviction briefly.

Regarding endangering the welfare of a child, "[a] parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S.A. § 4304(a)(1). In addition to repeating his weight of the evidence argument, Appellant claims the trial court should have instructed the jury on the version of the statute that existed in 2002 when the crimes in question occurred. (Section 4304 was subsequently amended in 2007.) Appellant's Brief at 22. Appellant acknowledges that he did not object to the instruction, thus rendering this issue waived. Pa.R.A.P. 302(a). In any event, Appellant fails to explain whether there is any substantive difference between the earlier and current versions of the statute and, if so, why it is relevant here.

Appellant also argues, in a single sentence and without citation to the record or any authority, that he violated no duty of care to the victim. Appellant's Brief at 22. Failure to develop an argument with citation to the record and pertinent legal authority results in waiver. Pa.R.A.P. 2119(b), (c); **Commonwealth v. Williams**, 959 A.2d 1252, 1258 (Pa. Super. 2008). We

observe that our Supreme Court has held § 4304 to be applicable to religious authorities. ***Commonwealth v. Lynn***, 114 A.3d 796 (Pa. 2015).

Next, we address Appellant's conviction for corruption of minors:

> Except as provided in subparagraph (ii), whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of any crime, or who knowingly assists or encourages such minor in violating his or her parole or any order of court, commits a misdemeanor of the first degree.

18 Pa.C.S.A. § 6301(a)(i). Appellant argues, without citation to the record or any pertinent authority, that "[e]ven if it is assumed that Appellant had inappropriate conduct with [the victim], this does not mean her morals were corrupted or that Appellant intended to corrupt her morals." Appellant's Brief at 23. As noted above, failure to develop an argument with citation to the record and pertinent authority results in waiver. Pa.R.A.P. 2119(b), (c); ***Williams***, 959 A.2d at 1258. Regardless of waiver, we note that sexual offenses against a victim have been held to support a conviction under § 6301. ***Castelhun***, 889 A.2d at 1234.

Finally, we consider Appellant's conviction for unlawful contact with a minor:

> **(a) Offense defined.--**A person commits an offense if he is intentionally in contact with a minor, or a law enforcement officer acting in the performance of his duties who has assumed the identity of a minor, for the purpose of engaging in an activity prohibited under any of the following, and either the person initiating the contact or the person being contacted is within this Commonwealth:

(1) Any of the offenses enumerated in Chapter 31 (relating to sexual offenses).

18 Pa. C.S.A. § 6318(a)(1).  Appellant argues, contrary to the victim's testimony, that that the record fails to establish that he touched the victim's genitals or forced her to touch his.  Appellant's Brief at 19.  Appellant relies on evidence of his character and standing in the community, and on the victim's delay in report.  He insists that "[t]his is not merely a question of the weight of the evidence."  We have already explained the invalidity of this argument.  In summary, we have considered and rejected Appellant's challenges to the sufficiency of the evidence in support of his convictions.

Next, Appellant argues the trial court erred in granting the Commonwealth's pretrial motion to admit evidence of Appellant's other bad acts.  We review the trial court's evidentiary ruling for abuse of discretion. *Commonwealth v. Kennedy*, 959 A.2d 916, 923 (Pa. 2008), *cert. denied*, 556 U.S. 1258 (2009).  Pennsylvania Rule of Evidence 404 provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Pa.R.E. 404(b)(1).  But other acts evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Pa.R.E. 404(b)(2).  The Commonwealth must establish that "the probative value of the evidence outweighs its potential for unfair prejudice."  *Id.*  "In order for other crimes evidence to be admissible,

its probative value must outweigh its potential for unfair prejudice against the defendant, Pa.R.E. 404 (b)(2), and a comparison of the crimes proffered must show a logical connection between them and the crime currently charged." *Commonwealth v. Hicks*, 156 A.3d 1114, 1125 (Pa. 2017) (plurality), **cert. denied**, ___ S. Ct. ___ (Oct. 2, 2017).[2]

"In comparing the methods and circumstances of separate crimes, a court must necessarily look for similarities in a number of factors, including: (1) the manner in which the crimes were committed; (2) weapons used; (3) ostensible purpose of the crime; (4) location; and (5) type of victims." *Commonwealth v. Weakley*, 972 A.2d 1182, 1189 (Pa. Super. 2009), **appeal denied**, 986 A.2d 1250 (Pa. 2009). "Remoteness in time between the crimes is also factored, although its probative value has been held inversely proportional to the degree of similarity between crimes." *Id.*

---

[2] The **Hicks** Court's analysis of Rule 404(b) did not garner a majority. Justice Dougherty, joined by Justices Todd and Mundy, held the other acts evidence to be admissible. Chief Justice Saylor concurred in that result but offered a different rationale. **Hicks**, 156 A.3d at 1130-39 (Saylor, C.J. concurring). Justice Baer found the evidentiary ruling to be a "close call" but concluded any error was harmless. **Id.** at 1139 (Baer, J. concurring). Justice Donohue argued that the evidentiary ruling was erroneous, and that the decisional law under Rule 404(b) has come unmoored from its underlying common law rationale. **Id.** at 1143-57 (Donohue, J. dissenting). Justice Wecht agreed with much of Justice Donohue's analysis but believed the error to be harmless. He dissented because the Commonwealth consistently maintained that the other acts evidence was crucial to its case. **Id.** at 1157-59 (Wecht, J. dissenting). Instantly, we must confine our analysis to binding precedent from our Supreme Court and this Court.

In ***Commonwealth v. Arrington***, 86 A.3d 831 (Pa. 2014), the defendant stood trial for the murder of his girlfriend. The Commonwealth introduced evidence that the defendant assaulted three other ex-girlfriends when they tried to break up with him or interacted with other men. ***Id.*** at 842. In one prior instance, the defendant burned the victim's apartment and assaulted her brother. ***Id.*** at 843. In a second, he pistol-whipped the victim on two occasions. ***Id.*** The defendant also used an axe to assault a male acquaintance of the pistol-whipping victim. ***Id.*** The third female victim testified that the defendant punched her in the face when she smiled at a group of men on the beach. ***Id.*** at 844. After the victim broke off the relationship, the defendant stalked her and threatened her and her family with death. ***Id.*** The Supreme Court found the prior acts admissible as evidence of a common scheme:

> In each instance, Appellant: (1) monitored his girlfriend's daily activities; (2) resorted to violence when his partner wanted to end a relationship or interacted with other men; (3) inflicted head or neck injuries with his fist, a handgun, or an edged weapon; and (4) harmed or threatened to harm members of his girlfriend's family or male acquaintances that he viewed as romantic rivals.

***Id.*** The evidence was sufficiently probative because it illustrated "a distinct behavioral pattern that strengthened the prosecution's case, which consisted entirely of circumstantial evidence[.]" ***Id.*** at 844-45. The prior incidents proved the defendant would use deadly force to prevent a woman from leaving him, and the trial court's limiting instructions were sufficient to avoid any

unfair prejudice to the defendant's case. *Id.* at 845. Then-Justice Saylor dissented, noting that decisional law under Rule 404(b) was moving "further and further away from the centering ground of signature crimes." *Id.* at 860-61 (Saylor, J. dissenting).

In *Commonwealth v. Aikens*, 990 A.2d 1181 (Pa. Super. 2010), *appeal denied*, 4 A.3d 157 (Pa. 2010), a jury found the defendant guilty of sexually assaulting his biological daughter when she was fourteen years old. The assault occurred in the defendant's bedroom. He played a pornographic movie and massaged the victim's shoulders, thighs, buttocks, and crotch. *Id.* at 1182-83. After the victim prevented Appellant from removing her belt, the defendant "groped and satisfied himself against his daughter." *Id.* at 1183. At trial, the Commonwealth presented the testimony of a thirty-two-year old half-sister of the victim. The victim and her half-sister were unacquainted. The half-sister testified that she stayed at Appellant's apartment occasionally when she was fifteen years old. *Id.* On one occasion, the defendant played a pornographic movie and raped her. *Id.* We concluded the PCRA[3] court properly denied relief because the evidence was admissible as a common

_____

[3] On direct appeal, this Court concluded the defendant waived his challenge to the other acts evidence, but also noted that the trial court's ruling was correct. *Aikens*, 990 A.2d at 1184. We acknowledged that when a decision rests on two equally valid grounds, neither is *obiter dictum*. *Id.* (quoting *Commonwealth v. Reed*, 971 A.2d 1216, 1220 (Pa.2009)). We analyzed the merits in the event *Reed* did not apply "because the explanation of the basis for our direct-appeal merits resolution was unduly truncated." *Id.*

scheme. *Id.* at 1185. The victims were similar in age when the assaults occurred, both were the defendant's biological daughters, both assaults occurred during an overnight visit with the defendant in the defendant's bed while the defendant played a pornographic movie. *Id.* at 1185-86. "These matching characteristics elevate the incidents into a unique pattern that distinguishes them from a typical or routine child-abuse factual pattern." *Id.* at 1186. Moreover, the similarities "were not confined to insignificant details that would likely be common elements regardless of who committed the crimes." *Id.*

The *Aikens* Court relied on *Commonwealth v. Luktisch*, 680 A.2d 877 (Pa. Super. 1996), wherein a jury found the defendant guilty of raping his stepdaughter when she was eleven years old. The victim's stepsister, T.L., who was twenty-nine years old at the time of trial, testified that the defendant began having oral sex with her when she was between the ages of five and eight, and that he began having sexual intercourse with her when she was eight years old. *Id.* at 878. Likewise, C.G., the victim's natural sister and the defendant's stepdaughter, testified that the defendant began touching her breasts and vagina when she was eight years old. *Id.* The conduct progressed to oral sex, and eventually intercourse when C.G. was eleven. *Id.* This Court upheld the admission of the evidence because the victims were approximately the same age during the assaults, they were all a daughter or stepdaughter of the defendant, they were living with the defendant when the assaults

occurred, and the nature of the defendant's assault of each was nearly identical. *Id.* at 879. Given the similarities, the time lapse between the various assaults was not significant. *Id.*

Instantly, the trial court admitted the testimony of N.B., who attended Appellant's church with her family when she was young. N.T. Trial, 10/9/15, at 142. N.B. saw Appellant at the church and also visited his home with her family. *Id.* at 146. She viewed Appellant as her stepdad. *Id.* at 165-66. N.B. testified that Appellant occasionally gave her money, as much as $100 at a time, and asked her not to tell his wife. *Id.* at 148. The victim here testified that Appellant gave her $5 on one occasion and then refused to give money to his own son. *Id.* at 14-15. On one occasion when N.B. was 18 years old, Appellant commented on N.B.'s underwear. *Id.* at 149-150. Appellant stated, "tastes like candy," a reference to a slogan Appellant knew to be printed on a pair of N.B.'s underwear. *Id.* at 149-150, 212. Appellant knew this because, at some earlier date, N.B. did her laundry at his house and Appellant took her clothes out of the dryer. *Id.* at 212. Shortly thereafter, when Appellant was dropping N.B. off at her father's house, Appellant kissed her on the lips. *Id.* at 150. N.B. stated, "he tried to go further as far as kissing me, like—I—I jumped back because of the fact that I felt like he was putting his tongue in my mouth as he was kissing me." *Id.*

N.C., the victim's half-sister who attended Truth Baptist Church along with the victim, testified that she viewed Appellant as a father figure. N.T.

Trial, 10/13/15, at 4-5, 9. She started visiting Appellant's house when she was seven or eight years old. *Id.* at 6. Appellant began by occasionally kissing N.C. on the lips. *Id.* at 9. Eventually, he began tongue-kissing her and fondling her breasts and buttocks. *Id.* at 10. When N.C. was between the ages of 10 and 12, Appellant began giving N.C. clothes and money. *Id.* at 11. He also began making her touch his penis and touching her vagina. *Id.* at 11-12. N.C. terminated an encounter when Appellant took off his pants and she believed he wanted to have sexual intercourse. *Id.* at 12. N.C. finally divulged these experiences to her boyfriend when she was 20 or 21 years old. *Id.* at 15. When N.C. was approximately 23 years old, a meeting took place at the Truth Baptist Church with Emmanuel Lambert, a minister serving as mediator, to address N.C.'s allegations against Appellant. *Id.* at 21-22, 49-50. N.C., her mother and stepfather, Appellant, and Appellant's wife were present. No action was taken against Appellant after the meeting. *Id.* at 24-25, 50.

Thus, all three victims attended Appellant's church and commonly visited Appellant's home. They received gifts, including gifts of money, from Appellant and came to view him as a father figure. The conduct occurred when the victims were alone with Appellant—in his home in two of the three cases and in his car in the third case. The circumstances of the assaults in Appellant's home were nearly identical. N.C. and N.B. both testified they believed Appellant wanted the sexual conduct to go further.

Analyzing the prior acts under the **Weakley** factors (**see Weakley**, 972 A.2d at 1189), we discern no abuse of discretion in the trial court's decision to admit them into evidence as part of a common scheme. The manner in which Appellant committed the crimes at issue and the prior acts were very similar in several important respects. Appellant established a father figure relationship with each victim. They belonged to his church, spent time at his home, and received gifts from him. Appellant's sexual conduct toward the victim and N.C. was very similar—grinding, fondling, and forcing them to touch his penis while he touched their vaginas. N.B. was older when Appellant kissed her on the lips, and the incident occurred in a car. But given the similarities in the way he developed his relationship with N.B., N.C., and the victim, we do not believe N.B.'s age warrants a different result.

The second **Weakley** factor—weapons used—is inapplicable. The third factor—ostensible purpose of the crime—supports the trial court's ruling. The evidence supports a conclusion that Appellant sought sexual gratification from young girls who trusted him and viewed him as a father figure and religious leader. Location, the fourth factor, supports the trial court's decision. Two of the acts happened in the Appellant's home; the third in his car. All three acts occurred on or in Appellant's property when no others were present. The fifth factor, type of victim, strongly supports the trial court's decision. As we have explained, all three victims were young females who viewed Appellant as a father figure after attending his church, spending time in his home, and

getting to know him. Given these circumstances, the difference in age among the victims is not significant. We recognize that *Weakley* sets forth a nonexclusive list of relevant considerations. Here, we find *Weakley* useful in addressing the arguments Appellant raised in opposition to the trial court's admission of prior acts evidence.

In summary, the similarities among the victim's assault and the prior bad acts involve more than insignificant details. *See Aikens*, 990 A.2d at 1185-86. As was the case in *Arrington*, Appellant exhibited a distinct behavioral pattern evidencing a common scheme or pattern that significantly strengthened the Commonwealth's case. *See Arrington*, 86 A.3d at 844-45. In *Arrington*, the prior acts evidence helped prove guilt because the Commonwealth had only circumstantial evidence of Appellant's guilt. Here, the Commonwealth had only the recollection of a victim who was seven or eight years old at the time of the assaults in 2002. Trial took place in 2016. In addition, as in *Arrington*, the trial court issued limiting instructions governing the jury's consideration of the other acts evidence, thus limiting the potential for unfair prejudice. N.T. Trial, 10/15/15, at 83. For all of the foregoing reasons, we conclude the trial court did not abuse its discretion in admitting evidence of Appellant's prior acts.

In summary, we conclude the record contains sufficient evidence in support of Appellant's convictions. We find no abuse of discretion in the trial court's evidentiary ruling. We therefore affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/30/2017